IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1996 SESSION



FILED

**June 24, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,            )

          APPELLEE,          )

v.                                   )

MICHAEL ROBINSON, MELVIN AGNO TAYLOR, )
THOMAS JERMAINE RAY,          )
FRED HOLBERT WOODS, JR., and      )
BRIAN SWAGGERTY,            )

          APPELLANTS.        )

No. 03-C-01-9510-CC-00303

Cocke County

Rex Henry Ogle, Judge

(Facilitation of Second Degree
Murder and Second Degree
Murder)


FOR THE APPELLANTS:

For Appellant Robinson:
James W. Greenlee
118 Bruce Street
Sevierville, TN 37862

For Appellant Taylor:
Edward C. Miller
Public Defender
P. O. Box 416
Dandridge, TN 37725-0416

For Appellant Ray:
James D. Hutchins
P. O. Box 946
Dandridge, TN 37725-0946

For Appellant Woods:
Steven E. Marshall
124 Court Avenue, Suite 201
Sevierville, TN 37862

For Appellant Swaggerty:
Tim S. Moore
396 Moore Brand Way
Newport, TN 37821

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Eugene J. Honea
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Alfred C. Schmutzer, Jr.
District Attorney General
125 Court Avenue, Suite 301
Sevierville, TN 37862

Richard R. Vance
Asst. District Attorney General
339 East Main Street
Newport, TN 37821


OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellants, Melvin Taylor, Thomas Jermaine Ray, Fred Holbert Woods, Jr., and Brian Swaggerty (defendants), were convicted of second degree murder, a Class A felony, by a jury of their peers. Michael Robinson, a co-defendant, was convicted of facilitation of second degree murder, a Class B felony. The trial court, finding the defendants to be standard offenders, imposed the following Range I sentences:

1.) Taylor: confinement for twenty-five (25) years in the Department of Correction;

2.) Ray: confinement for nineteen (19) years in the Department of Correction;

3.) Woods: confinement for twenty-one (21) years in the Department of Correction;

4.) Swaggerty: confinement for twenty-three (23) years in the Department of Correction; and

5.) Robinson: confinement for twelve (12) years in the Department of Correction.

The victim, Patrick Alley, was beaten to death in Newport, Tennessee on the evening of February 18, 1994. In the days preceding his death, he had pulled a gun on Woods and threatened to "kill all the niggers on the Hill." Jones Hill is apparently a predominantly African-American community in Newport. Woods later stated that if he found Patrick Alley, he would shoot him.

On the evening of his death, Patrick Alley drove to Sue's Place, a local tavern and popular gathering place for the black community. He parked his car in the parking lot and entered the establishment. Taylor, Woods, Ray, Swaggerty and Jimmy Jackson were standing in the street across from Sue's Place, gathered around "Big Willie" Davidson's truck. Bobby Lynn Stewart was riding up and down the street.

Michael Robinson stood in the street, apart from the others, and appeared nervous. Gino Swaggerty, reporting for work at Sue's Place, walked by Robinson and said something to him. Robinson then went to Patrick Alley's car, got in, started it, drove it down the street, and parked it in a school parking lot.

Cora Sue Singletary, the proprietor of Sue's Place, noticed the victim's degree of intoxication and feared he might fall and hurt himself in her establishment. She therefore asked the victim's friend, Kenneth Carmichael, to help the victim to his car. Carmichael

2

obliged; as he escorted the victim out the door, he noticed Woods, Swaggerty, Taylor, and Jimmy Jackson standing across the street. The victim appeared to some to shadow-box; others claimed he was jumping up and down, kicking his feet in the air. Carmichael and the victim turned and started walking down the street, away from this crowd. The men followed. The victim approached Taylor, said something to him and made some sort of gesture. Taylor told Carmichael to "get the f - - k out of the way." The victim began to run and Carmichael, realizing he was considerably outnumbered, retreated and went inside Sue's Place. The crowd chased the victim out of sight. Taylor carried a broken stick as he chased the victim.

Bobby Lynn Stewart was the first to return from the chase. Sometime thereafter, Swaggerty, Ray, Taylor, Woods, and Jimmy Jackson returned to Sue's Place. Swaggerty boasted, "We f - - ked him up, didn't we?" Gino Swaggerty overheard Ray tell Taylor that "he got a good lick in on him."[1] The victim had a rare blood type, which only .6 percent of the population shares. Ray had blood on him which matched the victim's.

Taylor asked Tony Davis, a patron at Sue's Place, to go and see if a body was still laying beside Wayne Dockery's house. Davis and his friend, Junior Cole, went to the place Taylor instructed and saw the victim's apparently lifeless body. As they returned to report what they had seen, Woods and Bobby Lynn Stewart walked toward the body; en route, Woods said he would break the victim's neck. Woods kicked the victim's neck and walked back to Sue's Place. Once there, he announced the victim was dead and he was going to wipe the blood off his shoe.

Robinson took the victim's car and picked up the body, covering his hands with a pair of white socks. He placed the body in the front seat of the car and drove the car to Newport Elementary School. Bobby Stewart took his car and followed Robinson; Robinson got in the car with Stewart, leaving the victim's car at the elementary school, where it was discovered by Officer Mike Hansel of the Newport Police Department at 11:18 p.m. Robinson threw the socks behind a house near the Bryant Town Projects. The blood on these socks matched the blood of the victim. Robinson was paid two rocks of cocaine by Swaggerty to dispose of the victim's body.

---

[1]The record is unclear as to whether Ray was complimenting Taylor or boasting his own exploits.

Swaggerty, Taylor, Woods, and Jimmy Jackson entered Sue's Place. Woods stood at the kitchen door and motioned for Cora Sue Singletary. He told her she had better keep her "damn mouth closed 'cause that man was dead." Singletary suffered an asthma attack and ran outside. She saw a bloody shovel handle and began to scream. Taylor picked up the handle and started to walk down the road; Woods insisted that Taylor burn the handle. Singletary told them not to burn it in her place; still suffering from fright and the asthma attack, she ran back inside to wash her face in cold water. There was a wood stove in the front room; she heard the stove door open and close. When she went into the front room, no one was there.

The next day, the police recovered a shovel ferrule stained with blood consistent with the victim's blood. A piece of broken wood was recovered with the ferrule. That same day, Taylor and Jimmy Jackson met at the home of a mutual acquaintance. Jackson admitted he had punched the victim in the shoulder; Taylor admitted he had hit the victim in the head. Taylor said that everyone needed to get his story straight.

Dr. Cleveland Blake, a pathologist, testified the victim had suffered multiple injuries before he died, multiple blows to the head, and a kick to the forehead. After his death, the victim was stomped in the left chest and struck in the back with a tool consistent with the recovered shovel ferrule. Dr. Blake opined the injuries to the victim's head caused his death. Those injuries were inflicted with a round, cylindrical object, approximately three-eighths of an inch in diameter. Dr. Blake stated the piece of wood recovered with the ferrule snapped from the shovel handle when the shovel was used to strike something.

## I.

Each defendant contends that the evidence is insufficient to support his conviction. We disagree.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[2] This rule is applicable

---

[2]Tenn. R. App. P. 13(e).

to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.[3]

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence.[4] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[5] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[6]

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[7] In State v. Grace,[8] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[9] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.[10]

a. Taylor: Taylor was part of the crowd that chased the victim out of sight of the witnesses. One witness saw him with a shovel handle before the chase; another witness

---

[3]State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

[4]State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

[5]Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

[6]State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

[7]Cabbage, 571 S.W.2d at 835.

[8]493 S.W.2d 474, 476 (Tenn. 1973).

[9]State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

[10]Tuggle, 639 S.W.2d at 914.

saw him return from the chase with a broken stick. Taylor burned the shovel handle and admitted he hit the victim in the head.

b. <u>Woods</u>: Woods had announced his intent to kill the victim if he found him. He was a part of the crowd which chased the victim and after the victim's demise, Woods returned to the body, stated he would break the victim's neck, and kicked the corpse in the neck. Later, he had the shovel handle burned and insisted that Cora Sue Singletary keep quiet about her knowledge of the victim's death.

c. <u>Ray</u>: Ray was a part of the crowd which chased the victim. He returned from the chase with blood on him that matched the victim's blood. He and Taylor boastfully discussed the murder.

d. <u>Swaggerty</u>: Swaggerty also was a part of the crowd which chased the victim. Swaggerty returned from the chase and stated, "We really f - - ked him up, didn't we?" Swaggerty then paid Robinson two rocks of cocaine to move the victim's body.

This evidence was sufficient to support a conviction for second degree murder for each of these defendants.[11]

e. <u>Robinson</u>: After the victim entered the bar, Robinson secreted the victim's car at a school parking lot. Once the victim had been murdered, he donned gloves and moved the body. A reasonable jury could have found Robinson moved the victim's car, knowing that the victim's retreat from the angry crowd would be much more difficult when deprived of his vehicle. The evidence was therefore sufficient to support his conviction.[12]

## II.

Taylor and Swaggerty contend the trial court committed error of prejudicial dimensions in refusing to permit the defendants to introduce evidence of the victim's reputation for violence. The only evidence attempted to be introduced was contained in the information summary of the autopsy protocol.

The state filed a motion in limine to prevent the introduction of evidence pertaining

---

[11]Tenn. R. App. P. 13(e); <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

[12] <u>Id</u>.

6

to the victim's reputation for violence.  Contrary to the arguments advanced in support of this issue, the trial court did not rule on the merits of the state's motion pre-trial.  The trial court simply held neither party could mention or allude to evidence of the defendants' reputations or the victim's reputation during voir dire examination of the prospective jurors.

The state introduced evidence the victim, who was white, had threatened to kill the African-Americans who resided on a hill.  He also threatened Woods with a gun.

During the cross-examination of the pathologist, counsel for Taylor began questioning the doctor about the informational summary in the autopsy protocol and how it was prepared.  The state advised the trial court it appeared defense counsel would eventually attempt to elicit from the witness the following statement contained in the informational summary:

> The undersigned pathologist was first notified about 9:15 a.m. on February 19, 1994, by telephone in San Antonio, call relayed by Laurie Blake.  Return call to Jimmy Gregg in Newport indicated that the Medical Examiner and Attorney General were requesting a  forensic necropsy on the body of Patrick Lee Alley.  Mr. Alley was said to be a 31 year old white male professional boxer.  Some behavioral characteristics of the subject were listed, including a "mean streak" and a propensity to "pick fights" by taunting, teasing, and generally aggravating others when he was not boxing.  He apparently followed this inclination on the night of February 18, when he went to a local black tavern.  He was known there, readily getting the patrons into an agitated state; and some of them decided to lay a trap for him outside. . . .

The trial court advised defense counsel this information could not be introduced through the pathologist.  The court said in ruling:

> In that case [State v. Furlough], of course, it is the testimony or the statement of the alleged victim in that case, and the law is clear on that, now, gentlemen.  We know not to rely on that.  In this case statements made to Dr. Blake by someone else about the reputation or so forth of the victim at this time, the Court is going to exclude.  You know, until it's raised properly it can't come in at this juncture.

The defendants did not make any other attempt to introduce evidence of the victim's reputation for violence.  Nor did the defendants make a proffer of evidence they wanted to introduce into evidence.

The fallacy in the defendants' argument is four-fold.  First, the very information the

defendants sought to introduce to establish the victim was the first aggressor was contained in the autopsy protocol. The state introduced the report through the testimony of the pathologist. It is designated as Exhibit 24. Thus, the defendants cannot be heard to complain the trial court refused to permit the introduction of the information sought to be elicited from the evidence. Tenn. R. Evid. 803(6); State v. Rucker, 847 S.W.2d 512, 515 (Tenn. Crim. App. 1992); N. Cohen, S. Sheppeard, and D. Paine, Tennessee Law of Evidence, § 803(6).11 (3d ed. 1995). However, this does not mean every entry in the records is admissible. Rucker, 847 S.W.2d at 515. In Rucker, the history contained in the records of the hospital was based upon second- and thirdhand hearsay. This Court held the history was not admissible as evidence.

In this case, the pathologist did not know the victim. The information contained in the informational summary apparently was provided by T.B.I. Agent Jimmy Gregg. It is unknown were Agent Gregg obtained the information. Moreover, the information contained in the informational summary is conclusory in nature. There is no specific act of violence contained in the summary. Given these circumstances and the statement contained in the informational summary, the trial court correctly ruled the statement in question was inadmissible as evidence.

Third, the defendants failed to establish a sufficient predicate for prior acts of violence to establish the victim was the first aggressor. The victim was extremely drunk. His blood-alcohol content was .43. The pathologist testified such level of intoxication would kill 35 to 40 percent of the population. He was staggering as he exited the establishment. He eventually began walking toward the four defendants. The victim may have said something to one of the defendants. However, the victim ran away and the four defendants pursued the victim, caught him, and murdered him.

In cases such as this, the only basis for the introduction of a victim's reputation for prior acts of violence is to corroborate the victim was the first aggressor. State v. Ruane, 912 S.W.2d 766, 781 (Tenn. Crim. App. 1995); State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). Thus, before such evidence is admissible, the evidence must establish an issue which makes such evidence relevant, and, therefore, admissible. Ruane, 912 S.W.2d at 781.

8

Fourth, if the defendants had evidence of prior acts of violence which they thought admissible, it was incumbent upon the defendants to make an offer of proof of those acts. Before an appellate court can rule upon an issue predicated upon the exclusion of evidence, the evidence excluded must appear in the record. Tenn. R. Evid. 103(a)(2); State v. Goad, 707 S.W.2d 846, 853 (Tenn. 1986); State v. Alley, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994); Tennessee Law of Evidence § 103.4. If the evidence is not contained in the record, the appellate court will not consider the issue. Alley, 882 S.W.2d at 815; State v. Lane, 689 S.W.2d 202, 205 (Tenn. Crim. App. 1984), per. app. denied as to Lane, per. app. dismissed as to Webb (Tenn. 1995); State v. Byerley, 658 S.W.2d 134, 139 (Tenn. Crim. App.), per. app. denied (Tenn. 1983).

This issue is without merit.

### III.

Robinson contends the verdict of the jury is potentially a patchwork analysis of the jury since it fails to indicate who he facilitated. He argues different jurors may have believed he facilitated different persons, and all agreed he facilitated someone. He claims there is nothing to indicate all twelve jurors agreed he facilitated any one person. This contention is unfounded in fact and law.

The evidence contained in the record is crystal clear who Robinson specifically facilitated. Swaggerty, a co-conspirator in the killing of the victim, approached Robinson about disposing of the victim's body. Swaggerty agreed to give Robinson two rocks of crack cocaine if he would move the victim's body to another location. Thereafter, Robinson placed the victim's body in the victim's motor vehicle and drove the vehicle to the parking lot of a local school.

The four defendants convicted of second degree murder were co-conspirators in the killing of the victim. There were conversations regarding the killing of the victim before these defendants chased, caught, and killed the victim. All of these individuals were willing participants in the murder. Based upon the prior conversations and the actions of these defendants, a conspiracy was founded.

Swaggerty's hiring of Robinson was in furtherance of the conspiracy. Thus, this conduct is attributable to all members of the conspiracy, which included Taylor, Ray, and Woods.

This issue is without merit.

## IV.

Robinson contends the trial court committed reversible error by denying his motion to sever his trial from the other defendants. Robinson argues the jury heard testimony it would not have heard if he had been given a separate trial.

The decision of whether to grant a motion for severance rests within the sound discretion of the trial court and will not be reversed absent a showing of prejudice.[13] In this case, the trial court did not abuse its discretion.

The trial court charged the jury that any admissions by one defendant could not be used against another. The court further instructed that the jury was to confine its attention to the evidence which bore on the guilt or innocence of each defendant.

Robinson has pointed to no specific evidence, inadmissible at a separate trial, which unfairly prejudiced him. Nothing in his brief or in the record suggests that the trial court abused its discretion by denying his motion to sever.

This issue is without merit.

## V.

Swaggerty contends the trial court erred by not requiring the prosecutor to recuse himself. A district attorney general may not prosecute an accused where the district attorney acquires information relating to the prosecution during the course of his previous

---

[13]State v. Hutchinson, 898 S.W.2d 161, 166 (Tenn. 1994) cert. denied __ U.S. __, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Parham v. State, 885 S.W.2d 375, 383 (Tenn. Crim. App.) per. app. denied (Tenn. 1994).

representation of the accused.[14]

In the case sub judice, District Attorney General Schmutzer used Brian Swaggerty as a witness at the preliminary hearing prior to Swaggerty's indictment. General Schmutzer was the District Attorney General before this crime occurred and there is no indication he ever represented Brian Swaggerty in any capacity. Swaggerty knew General Schmutzer was the District Attorney General.

General Schmutzer never indicated he was representing Swaggerty. He could not have done so, even if he so desired.[15] No confidential relationship was formed and the trial court did not err by denying Swaggerty's motion to recuse General Schmutzer.

## VI.

Taylor and Ray contend the trial court committed error of prejudicial dimensions by failing to charge the lesser included offenses of aggravated assault and assault. This issue is devoid of merit. These offenses are neither lesser included offenses nor lesser grade of second degree murder. State v. Trusty, 919 S.W.2d 305, 312 (Tenn. 1996).

## VII.

Taylor, Ray, and Swaggerty contend the trial court committed error of prejudicial dimensions by refusing to strike the jury venire called to serve in this case. Based upon the facts elicited by the defendants, the trial court properly denied the defendants' respective motions.

When this case was tried, Cocke County had only one jury commissioner, Mike Proffitt. No names were placed in the jury box by Proffitt while he was the only commissioner. The last names added to the box were by Proffitt and another commissioner, Pat Sparks.

---

[14]State v. Locust, 914 S.W.2d 554, 557 (Tenn. Crim. App. ), per. app. denied (Tenn. 1995); State v. Phillips, 672 S.W.2d 427 (Tenn. Crim. App.), per. app. denied (Tenn. 1984).

[15]Tenn. S.Ct. R. 8, DR 5-105.

11

The commissioners used several sources to obtain names to place in the jury box. They used the telephone book, the voter registration rolls, property tax rolls, and driver's license records.

The record is devoid of evidence regarding the racial composition of the venire. The record reflects there were "three or four" African-Americans on the past venire. Cocke County has also had an African-American foreperson of the grand jury. The record is also devoid of evidence of Cocke County's population and the percentage of African-Americans in that community.

The trial court, the clerk, and Mr. Proffitt were apparently present when the seal on the jury box was broken and the names were drawn to create the jury venire. A small child drew the names from the jury box.

It appears an additional sixty names were drawn from the jury box the weekend prior to the trial. The record is devoid of evidence as to who was present when the names were drawn. However, a small child drew the names from the box, and the Cocke County Sheriff's Department contacted the individuals whose names were drawn. Only nineteen of these individuals appeared and became part of the venire.

As can be seen, the defendants failed to establish a violation of Tenn. Code Ann. § 22-2-304(a)(1). Mr. Proffitt, the sole jury commissioner, the clerk, and the trial court were present when the child drew the names. The mere fact there was only one jury commissioner did not constitute a violation of the statute.

This issue is without merit.

## VIII.

Ray contends the jury should have been given an instruction on the testimony of an accomplice. He argues the jury should have been able to determine for itself whether Gino Swaggerty was an accomplice and if it so determined, it should not accept his testimony absent corroboration.

One may not be convicted on the uncorroborated testimony of an accomplice.[16]

---

[16]Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811 (1959).

12

Slight circumstances, however, are enough to meet the required degree of corroboration.[17] An accomplice is defined as one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime.[18] An accomplice may be so declared by the trial court or the issue may be submitted to the jury.[19]

The record is devoid of evidence which indicates Gino Swaggerty was an accomplice of Taylor, Ray, Woods, and Brian Swaggerty. Thus, the trial court properly rejected the request to give an accomplice instruction.

# IX.

The trial court granted a continuance on Friday, January 27, 1995 when General Schmutzer's mother passed away. One of the defense attorneys refused to allow the jurors to be unsequestered so they could go home.

Taylor's counsel moved for a mistrial claiming, in essence, the jury might blame the defense for the delay, thus prejudicing the jury against Taylor. The trial judge overruled the motion, noting the court was careful not to tell the jury the lack of consent by counsel for one defendant prevented them from going home.

A continuance is a matter which rests within the sound discretion of the trial court and its discretion will not be disturbed absent a clear showing of prejudice to the defendant.[20] The fact the jury was sequestered over the weekend did not prejudice the defendant. The jury was not informed of the reason for their continued sequestration. By statute, either side, or the trial judge, could have been responsible for the jury not being allowed to return home for the weekend.[21]

---

[17]McKinney v. State, 552 S.W.2d 787 (Tenn. Crim. App. 1977), cert. denied (Tenn. 1977).

[18]Monts v. State, 214 Tenn. 171, 379 S.W.2d 34 (1964).

[19]State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993).

[20]State v. Green, 613 S.W.2d 229 (Tenn. Crim. App. 1980), per. app. denied (Tenn. 1981).

[21]Tenn. Code Ann. § 40-18-116.

This issue is without merit.

## X.

Taylor contends the trial court committed error of prejudicial dimensions when it chastised his counsel in front of the jury. During re-direct examination, the following exchange followed one of Tony Fain's answers:



Mr. Miller: Your Honor, I know I can cross examine him on this, but he told me he didn't know where Melvin Taylor was standing, that he was somewhere around the truck.

Gen. Vance: Object to this speech, Your Honor. He can't ask questions.

The Court: Mr. Miller, you know that was improper, don't you? Now you were basically commenting on his testimony. You can ask questions and he can answer them. Now don't be doing that.

Mr. Miller: I realize that, Your Honor. I can do it on cross-examination.

The Court: That's exactly right. And you didn't have to say that, did you?

Mr. Miller: I apologize to the Court.

The Court: You should.

Defense counsel did not interpose a contemporaneous objection or make a motion for a mistrial. The issue was first raised in his motion for a new trial. The defendant's failure to make a contemporaneous objection or motion for mistrial constitutes a waiver of the issue absent the existence of plain error.[22] The occurrence in question did not constitute plain error.[23]

---

[22]Tenn. R. App. P. 36(a); State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981), cert. denied, 457 U.S. 1110, 102 S.Ct. 2913, 73 L.Ed.2d 1320 (1982); State v. Sutton, 562 S.W.2d 820, 825 (Tenn. 1978); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993); State v. Leach, 684 S.W.2d 655, 658 (Tenn. Crim. App. 1984), per. app. denied (Tenn. 1985).

[23]See Tenn. R. Crim. P. 52(b); State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994).

**XI.**

Taylor contends the trial court committed prejudicial error when it allowed the prosecutor to question Kenneth Carmichael about a prior consistent statement. Kenneth Carmichael testified on cross-examination that Taylor was the only person with a stick in his hand when the chase began. Defense counsel for Taylor then asked him about a prior statement he gave to Officer Hannon where he claimed all of the defendants chasing the victim had sticks in their hands. Carmichael recalled telling Hannon that all the defendants had sticks.

On re-direct examination, General Schmutzer had Carmichael read from a statement given to T.B.I. Agent Richardson in which Carmichael said, "I do not know if the guys chasing Pat had sticks with them."

When the credibility of a witness is impeached with the suggestion that the testimony is fabricated or based on faulty recollection, prior consistent statements may be introduced for the sole purpose of corroborating the testimony of the witness.[24] Carmichael's statement was admissible only to corroborate his testimony. However, Taylor did not request a limiting instruction at trial and has thus waived the issue on appeal.[25]

This issue is without merit.

**XII.**

Taylor contends the trial court improperly limited the cross-examination of Tracy Wilson. Wilson testified Taylor stated he had struck the victim in the head. In her prior statement, Wilson reported Taylor "was talking about a blow to the head." According to Wilson's prior statement, Taylor said, "If they did an autopsy to prove it was a blow to the head [that killed the victim], it could be almost anybody because everybody was hitting him and kicking him in the head." The trial court did not allow Taylor to cross-examine Wilson about this prior statement because the other defendants would not be able to cross-

---

[24]State v. Meeks, 867 S.W.2d 361, 374 (Tenn. Crim. App.) per. app. denied (Tenn. 1993), cert. denied, 510 U.S. 1168, 114 S.Ct. 1200, 127 L.Ed.2d 548 (1994).

[25]Tenn. R. App. P. 36(a); Tenn. R. Evid. 105.

15

examine Wilson.[26]  Taylor's counsel contended he would have avoided this problem by asking Wilson if, in her prior statement, she mentioned only that Taylor "was talking about a blow to the head."

Where a trial court limits cross-examination regarding a prior consistent statement for purposes of excluding reference to a co-defendant, a rule of completeness may apply to the statement if substantially exculpatory information is altered or deleted.[27]  Wilson's prior statement, taken as a whole, indicates Wilson overheard Taylor admit he was one of many persons who struck the victim in the head.  This statement implicates Taylor.  To allow defense counsel to cross-examine this witness on only the requested part of the statement would imply that, in her previous statement, she did not mention Taylor's admission of a battery, giving the jury an unrealistic sense of her credibility.

This issue is without merit.

**XIII.**

Swaggerty and Robinson contend the introduction of evidence that Swaggerty paid Robinson two rocks of crack cocaine to dispose of the victim's body was irrelevant, and the prejudicial effect admitting the crack cocaine as the compensation outweighed any probative value of this evidence.  The record reflects the state did not offer any evidence of the drug transfer until Robinson's counsel opened the door by eliciting from a prosecution witness Robinson was paid to dispose of the body.

The trial court ruled prior to trial the state could not introduce evidence regarding the giving of crack cocaine for the removal of the body.  During the trial, Robinson's counsel raised the issue a second time.  The state acknowledged the trial court's ruling, and it agreed not to elicit this information from its witnesses.

The state subsequently called Tony D. Davis as a prosecution witness.  He testified what Robinson did on the evening in question, but he did not mention the fact Robinson

---

[26]See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

[27]State v. Runako O. Blair, Shelby County No. 02C01-9411-CR-00249 (Tenn. Crim. App., Jackson, November 22, 1995), per. app. denied (Tenn. 1996), citing United States v. Mussaleen, 35 F.3d 692, 697 (2d Cir. 1994).

16

was paid to remove the body. However, the following colloquy occurred during cross-examination by Robinson's counsel:

> Q. Isn't it true that Michael Robinson was paid to move the body?
>
> A. Yeah.
>
> * * * *
>
> Q. Were the people that offered or that hired Michael Robinson to move the body any of the people charged here today?
>
> A. Yeah.

During a jury-out hearing, the following colloquy took place:

> Gen. Schmutzer: I'm not getting into [this argument]. I would tell the Court that now. We can save a bunch of . . . .
>
> THE COURT: Well, if he's asked who paid him, if he's asked how he knows that, he may testify who offered to pay him.
>
> * * * *
>
> THE COURT: I've already ruled on this. I've ruled twice now; gentlemen, on this. But I think it's opened the door as to who paid him to move the body, and to what he was paid.

During re-direct examination, the following colloquy took place:

> Q. Who was it that offered to pay "Snake" [Michael Robinson] to move the body?
>
> A. Brian Swaggerty.
>
> Q. What did he offer?
>
> A. He offered him two rocks.
>
> Q. Do you know what rocks are?
>
> A. Yeah, it's crack white cocaine.

The trial court gave a limiting instruction immediately after this colloquy took place.

While Robinson contends he objected to this testimony, neither Swaggerty nor Robinson interposed a contemporaneous objection or moved the trial court for a mistrial. The trial court initially ruled the prosecution could not ask about drug transactions.

17

However, this was before Robinson's counsel asked the questions concerning Robinson being paid and if one of the four defendants paid him to remove the body. No objection was made to Davis's testimony on redirect.

This issue has been waived. It was the obligation of the parties to enter a contemporaneous objection to this testimony.[28] In addition, neither party made a contemporaneous motion for a mistrial.

This issue is without merit.

## XIV.

Ray contends the trial court committed error when it refused to strike Gino Swaggerty's testimony. Ray argues Swaggerty's testimony should have been stricken as Swaggerty lacked sufficient "personal knowledge of the Appellant's identity" to admit the testimony pursuant to Tenn. R. Evid. 602. Swaggerty testified Ray had blood on his hands and told Taylor "he got a good lick in on him." On the stand, Swaggerty referred to Ray sometimes as Tommy Ray, sometimes as "the dude from Dandridge." On cross-examination, Swaggerty admitted that on the night in question, he did not know Thomas Jermaine Ray, or that he resided in Dandridge. This information was provided to him by law enforcement officials investigating the death of the victim.

Questions concerning a witness's identification of a defendant go to the weight and credibility of his testimony and not to the admissibility of the testimony.[29] "[T]he weight and credibility of the testimony of a witness, and the reconciliation of conflicts in testimony, are matters entrusted exclusively to the jury as the trier of fact."[30] In this case, the trial court did not err in overruling Ray's motion to strike the testimony of Swaggerty.

This issue is without merit.

---

[28]McCracken v. State, 548 S.W.2d 340, 343 (Tenn. Crim. App. 1976), per. app. denied (Tenn. 1977).

[29]State v. Michael Hall, Shelby County No. 02C01-9304-CR-00062 (Tenn. Crim. App., Jackson, Aug. 24, 1994).

[30]Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App.), cert. denied (Tenn. 1978), citing Withers v. State, 523 S.W.2d 364 (Tenn. Crim. App. 1975), cert. denied (Tenn. 1975).

**XV.**

Taylor contends the trial court erred in allowing the photographic slides of the victim made by the pathologist during the autopsy to be introduced into evidence and presented to the jury. Taylor has failed to support this issue with legal authority, citation to the record, or argument. Thus, he has waived this issue.[31]

**XVI.**

Taylor, Ray, Swaggerty, and Woods contend the trial court imposed excessive sentences. They argue the trial court misapplied certain enhancement factors and mitigating factors.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the trial court from which the appeal is taken are correct."[32] This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."[33] The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.[34] However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives,

---

[31]Tenn. R. App. P. 27; Tenn. Crim. App. R. 10(b); State v. Davis, 751 S.W.2d 167, 170 (Tenn. Crim. App.), per. app. denied (Tenn. 1988).

[32]Tenn. Code Ann. § 40-35-401(d).

[33]State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

[34]State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).

(e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.[35]

When the accused is the party challenging the sentence, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous.[36]

## A.

The trial court enhanced Taylor's sentence based on a finding he had a previous history of criminal conduct,[37] was a leader in the offense,[38] and employed a deadly weapon in the commission of the offense.[39]  The court found no mitigating factors.

Taylor complains of the lack of a pre-sentence report.  Taylor contends the trial court improperly considered unadjudicated criminal conduct and erroneously enhanced the sentence based on the number of blows to the victim's head, the vulnerability of the victim, and his role as a leader in the offense.  He further contends the trial court improperly failed to find certain mitigating factors.

Taylor alleges, in essence, the trial court considered unadjudicated criminal conduct when it allowed Officer Shults to testify to drug transactions he witnessed.  There is no per se rule in Tennessee against considering unadjudicated conduct.  The trial court is merely prohibited from relying upon a mere arrest record to enhance a defendant's sentence.[40] Officer Shults testified he witnessed Taylor's drug transactions.  Officer Shults was available for cross-examination.  His in-court testimony provided the court with the opportunity to assess the complaining witness's credibility and provided the defense an

---

[35]Tenn. Code. Ann. §§ 40-35-103 and -210. State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

[36]Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

[37]Tenn. Code Ann. § 40-35-114(1).

[38]Tenn. Code Ann. § 40-35-114(2).

[39]Tenn. Code Ann. § 40-35-114(9).

[40]State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App.) per. app. denied (Tenn. 1990).

opportunity to impeach his claims.

Additionally, this was not the only criminal act in Taylor's past. He was fined $132.50 for aggravated assault and was placed on probation for another aggravated assault. The trial court did not err in enhancing Taylor's sentence for previous criminal behavior.

At the sentencing hearing, counsel for Taylor stated, "Your Honor, for defendant Melvin Taylor, we waive the necessity of a Pre-Sentence Report and are ready to go forward." Taylor may not now contend his statutory right to a presentence report was violated.

The number of blows inflicted to the victim is not an enumerated enhancement factor. The state concedes that the defendant's sentence should not have been enhanced based on the number of blows delivered.

The trial court found the victim was particularly vulnerable due to his intoxication. The pathologist testified the victim's blood-alcohol level was .43. He stated this degree of intoxication would kill 35 to 40 percent of the population. In addition, the witnesses said the victim was highly intoxicated. He arrived at Sue's Place in this condition. He was staggering inside and outside the establishment. The trial court properly found the victim was particularly vulnerable due to his degree of intoxication.[41]

The events of the night of the victim's death are left in question by this record. It is not clear who struck any of the blows to the victim. The trial court nonetheless properly found Taylor was a leader in the offense. He boasted of striking the victim and attempted to cover up the crime by coordinating the stories of the participants.[42]

Contrary to Taylor's contention, the trial court, as the finder of fact, had the discretion to find this crime did not occur as a result of provocation or under such unusual circumstances to illustrate his lack of sustained intent to violate the criminal law.

The defendant was twenty-one at the time of the offense. Nothing in the record

---

[41]See State v. Buckmeir, 902 S.W.2d 418, 423-24 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); State v. Bobby Burns, Blount County No. 03-C-01-9406-CR-00208 (Tenn. Crim. App., Knoxville, June 2, 1995).

[42]State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993), State v. Angele Franklin, Sevier County, No. 03C01-9402-CR-00061 (Tenn. Crim. App. at Knoxville, Sept. 27, 1995).

supports a finding that the defendant's age impaired his judgment about the wrongfulness of banding together with five of his compatriots to beat a drunken man to death. Nor does this Court find mitigating the fact Taylor graduated in the middle of his high school class, having been a basketball player and a runner.

## B.

The trial court found Thomas Jermaine Ray had a history of previous criminal behavior,[43] was a leader in the offense,[44] and committed the offense while released on bail.[45] Ray contends that the trial court erroneously failed to refer to a presentence report, misapplied enhancement factors and erroneously failed to find certain mitigating factors.

Ray complains the trial court did not refer to a presentence report as required by Tenn. Code Ann. § 40-35-210(b)(2). Ray failed to interpose an objection at the time of sentencing. He has therefore waived this issue.[46]

Ray also contends there was no evidence that he was a leader in the offense. The jury found Ray chased the victim down the street and was responsible for bringing about his death. One does not have to be the leader, merely a leader in the commission of the offense to qualify for enhancement factor (2).[47] The trial court did not abuse its discretion in finding that Ray was a leader in the offense.

Ray contends the trial court erroneously enhanced his sentence for both a prior burglary charge and for committing this offense while on bail for the same burglary charge. His prior criminal record is distinguishable from his inability to stay out of trouble while

---

[43]Tenn. Code Ann. § 40-35-114(1).

[44]Tenn. Code Ann. § 40-35-114(2).

[45]Tenn. Code Ann. § 40-35-114(13).

[46]Tenn. R. App. P. 36(a); State v. Lonnie Mayberry, Hamilton County No. 03C01-9108-CR-00246 (Tenn. Crim. App., Knoxville, January 28, 1992).

[47]State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993), State v. Angele Franklin, Sevier County No. 03C01-9402-CR-00061 (Tenn. Crim. App., Knoxville, September 27, 1995), per. app. denied (Tenn. 1996).

released on bail. Both were properly used to enhance the defendant's sentence.[48]

Ray argues the trial court improperly enhanced his sentence for joining in the fracas even though he did not know the victim. The record does not indicate the trial court relied on this fact. The court merely found it "troubling" that he would join a fight under such circumstances. This Court is troubled by this fact, but does not find it fits any of the statutory enhancement factors. Absent reliance on this fact in sentencing Ray, the trial court did not commit error.

Ray argues his youth should have been considered as a mitigating factor. The record indicates the trial court did consider his youth as illustrated by the sentence imposed.

Finally, Ray remarkably argues since he did not know the victim, no intent to violate the law motivated his conduct, qualifying him for a mitigation factor pursuant to Tenn. Code Ann. § 40-35-113(11). The trial court properly refused to consider this factor.

## C.

The trial court enhanced Woods's sentence based on the number of blows inflicted upon the victim, Woods's prior criminal activity,[49] and Woods's role as a leader in the offense.[50]

The trial court held that if the victim was alive when the blows were inflicted, Woods allowed the victim to be treated with extreme cruelty.[51] Alternatively, the trial court concluded that if the victim was dead, Woods was responsible for abusing a corpse, constituting criminal behavior.[52] While the state agrees the trial court should not have considered the multiple blows Woods inflicted upon the victim, the state's conclusion is erroneous. The trial court may consider the nature and circumstances of the offense in

---

[48]See State v. Joseph Hough, Hamblen County No. 03C01-9404-CR-00143 (Tenn. Crim. App., Knoxville, June 13, 1995).

[49]Tenn. Code Ann. 40-35-114(1).

[50]Tenn. Code Ann. § 40-35-114(2).

[51]Tenn. Code Ann. § 40-35-114 (5).

[52]Tenn. Code Ann. § 39-17-312.

23

sentencing an accused.[53]  Thus, the trial court properly considered the number of blows inflicted since this fact is part of the nature and circumstances of the offense in question.

Woods contends the trial court should not have considered his indictment for other crimes as evidence of prior criminal conduct.  While a mere arrest record is insufficient to establish criminal conduct, the same is not true for an indictment.  An innocent person may well be detained by the police because he bears physical characteristics similar to a perpetrator of a crime.  An arrest record would not indicate this person was wrongly suspected.  To the contrary, an indictment indicates that evidence against the accused has been presented to a grand jury and his peers have concluded that sufficient evidence existed to charge the accused with a crime.  The trial court therefore did not err in considering the defendant's indictment for sale and delivery of cocaine.

Woods argues the trial court should have considered as mitigation the fact he had no prior criminal record and he demonstrated remorse.  As discussed above, the defendant did have a prior criminal record.  Further, while the presence of a criminal record is an enhancement factor, the absence of a criminal record is not a mitigating factor.[54]  The trial court was in the best position to evaluate Woods's alleged remorse.  The court had the opportunity to observe Woods's mood and mannerisms.  He has not demonstrated an abuse of discretion.

## D.


The trial court found that Brian Swaggerty had an extensive criminal record,[55] was on release status at the time of the offense,[56] possessed a deadly weapon in the commission of the offense,[57] and was a leader in the commission of the offense.[58]

Swaggerty argues all five defendants could not be leaders in the offense and there

---

[53]Tenn. Code Ann. §§ 40-35-103 and -210; Scott, 735 S.W.2d at 829.

[54]State v. Keel, 882 S.W.2d 410, 422-23 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

[55]Tenn. Code Ann. § 40-35-114(1).

[56]Tenn. Code Ann. § 40-35-114(13).

[57]Tenn. Code Ann. § 40-35-114(9).

[58]Tenn. Code Ann. § 40-35-114(2).

was no credible evidence to show that Swaggerty was a leader in any respect. Swaggerty chased the victim, a chase that ended in the victim's death. The jury found Swaggerty responsible for the murder of Patrick Alley. Contrary to the defendant's contention, all five defendants could be properly considered leaders in the offense. One may even act at the direction of another and be a leader in the offense.[59]

Swaggerty argues he received a greater sentence than Woods, who was more involved in this offense than anyone, save Taylor. Swaggerty's prior criminal record is more extensive than those receiving lesser sentences. The weight to be assigned to the enhancement and mitigating factors presented is within the discretion of the trial court.[60]

Swaggerty argues his sentence should not have been enhanced for possession of a deadly weapon at the time of the offense as there was inconsistent proof relating to whether he had a stick or brick in his hand. This is a factual question resolved against the defendant by the trial court. If the defendant had a stick or brick in his hand, he possessed a deadly weapon at the time he was responsible for the victim's murder. Whether he had a stick or brick is a question properly resolved by the sentencing court.

Swaggerty finally argues the fact he assisted the government should be considered in mitigation. We disagree. We do not find that his testimony against his compatriots, given at a time he believed he would totally escape prosecution, entitles him to leniency.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
WILLIAM M. DENDER, SPECIAL JUDGE

---

[59]State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993); State v. Angele Franklin, Sevier County No. 03C01-9402-CR-00061 (Tenn. Crim. App., Knoxville, September 27, 1995), per. app. denied (Tenn. 1996).

[60]State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).