IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2009

**STATE OF TENNESSEE v. JOHNNY L. BURNS**

**Appeal from the Criminal Court for Davidson County**
**No. 2004-A-592    Cheryl Blackburn, Judge**

_____

**No. M2008-01374-CCA-R3-CD - Filed July 13, 2009**

_____

The Defendant, Johnny L. Burns, was originally tried and convicted of one count of selling less than .5 grams of cocaine within 1000 feet of a school, a Class B felony. Due to an error in jury instructions, this Court reversed and remanded his case for a new trial. See State v. Johnny L. Burns, No. M2005-01945-CCA-R3-CD, 2007 WL 595632, (Tenn. Crim. App., Nashville, Feb. 26, 2007). The Defendant was retried and again convicted of one count of selling less than .5 grams of cocaine within 1000 feet of a school. In this appeal, he contends that the trial court erred because it: (1) denied his request for supplementary police reports that he claims contain exculpatory information; (2) refused to admit into evidence a photograph used by the defense in cross-examination; (3) denied his motion for a mistrial due to improper remarks made by the prosecutor during closing argument; and (4) failed to instruct the jury on the lesser-included offense of attempted sale of less than .5 grams of cocaine within 1000 feet of a school. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Jeffrey DeVasher, Assistant Public Defender, (on appeal); Virginia Foard and Amy Goodwin, Assistant Public Defenders (at trial), Nashville, Tennessee, for the appellant, Johnny L. Burns.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The events underlying this case occurred on November 5, 2003. The State's proof established that on that evening, Officers Justin Fox and Ron Black of the Twentieth Judicial District Drug Task Force were conducting undercover drug buys in Nashville. Both were dressed in plain clothes and traveled in an unmarked car. Officer Fox drove the car while Officer Black sat in the front passenger seat. Their car was equipped with a wire, allowing nearby support personnel to monitor their interactions with suspects. However, the car was not equipped to record the conversations.

At about 6:50 p.m., Officers Fox and Black saw a man both identified as the Defendant walking toward the corner of Lewis and Lafayette Streets. The Defendant waved to them. Testimony by David Kline, manager of the mapping department at Metro Nashville Planning, established that this location is less than 1000 feet from J.C. Napier Elementary School. Officer Fox pulled the car to the curb; the Defendant stood next to the car's driver's side window. The Defendant asked what Officer Fox needed; Officer Fox replied, "a thirty," meaning about thirty dollars worth of crack cocaine. The Defendant handed Officer Fox a small amount of white rock substance, and Officer Fox handed the Defendant previously photocopied ten and twenty-dollar bills. Officer Fox said the "code word" to indicate that support personnel should move in and arrest the Defendant. In order to stall the Defendant and prevent him from fleeing, Officer Fox also asked the Defendant if he had a phone number Officer Fox could call if he ever needed larger drug quantities. Officer Fox testified that the Defendant gave him a phone number, and Officer Black testified that he heard Officer Fox ask for a phone number but did not hear whether the Defendant responded.

Less than a minute after Officers Fox and Black had first made contact with the Defendant, support personnel arrived and took him into custody. A search of the Defendant revealed no additional drugs, and also did not reveal any drug paraphernalia such as a crack pipe. Detective Corey Sanderson field-tested the white rock substance Officer Fox had received from the Defendant; it tested presumptively positive for crack cocaine. Police also found Officer Fox's ten and twenty-dollar bills on the ground where the Defendant had been standing. The Defendant was put in a "paddy wagon" with other suspects ensnarled in similar undercover buys. He was jailed later that evening.

Special Agent Mark Dunlap, a forensic scientist with the Tennessee Bureau of Investigation, was certified as an expert in forensic chemistry. He tested the white rock substance received from the Defendant and confirmed it to be .1 grams of cocaine.

The Defendant testified on his own behalf. He said that he had been at a friend's house "getting high" immediately before the sale. He left the friend's house to get cigarettes, cigars, juice, and a lighter at a nearby convenience store. He took his remaining crack cocaine with him in order to prevent his friend from smoking it during his absence. As he was returning to his friend's house, a car pulled up. He had not waved to the occupants of the car. The driver asked the Defendant if

he "knew anybody got a thirty."  The Defendant assumed Officers Fox and Black were drug users, but he also knew that white people tended to attract police when in that area.  In order to entice Officers Fox and Black to leave the area, he decided to sell them the small amount of crack cocaine on his person.  He gave it to Officer Fox and received thirty dollars in return.  Had he not sold the crack cocaine to the officers, he planned to roll it into the end of a cigarette and smoke it.

The State called Lieutenant William Mackall as a rebuttal witness.  After being certified as an expert in narcotics investigations, Lt. Mackall testified that he had never known crack cocaine, rather than powder cocaine, to be rolled into a cigarette or cigar.  He also testified that, in his experience, the Defendant would have been carrying a crack pipe had he been a casual user rather than a habitual cocaine dealer.

The jury convicted the Defendant of one count of selling less than .5 grams of crack cocaine within 1000 feet of a school.  He now appeals.

## Analysis

### I. Exculpatory Information

The Defendant first contends that the trial court erred in denying his motion to order the State to provide him with copies of seventeen supplemental reports made by participating support officers the night of his arrest.  The Defendant contends that these reports are exculpatory because they make no mention of Officer Fox's request that the Defendant provide him with a phone number.

In Brady v. Maryland, 317 U.S. 83, 87 (1963), the United States Supreme Court held that the State has a constitutional duty to furnish an accused with any exculpatory evidence pertaining to either the accused's guilt or potential punishment.  The State must also disclose evidence which could be used by an accused to impeach a witness.  See Giglio v. United States, 405 U.S. 150 (1972).

Tennessee has adopted a four-prong test to evaluate an alleged Brady violation.  A defendant must establish that: (1) he made a proper request for the production of the evidence, unless the evidence was obviously exculpatory in nature and helpful to the accused, in which case the State is required to produce the information whether requested or not; (2) the information must have been favorable to the Defendant; (3) the State must have suppressed the information; and (4) the information must have been material.  State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995).  In order to show materiality, a defendant must demonstrate a reasonable probability that the result of the proceeding would have been different had the information been disclosed.  See United States v. Bagley, 473 U.S. 667, 682 (1985).

The trial court denied the Defendant's motion after the following discussion:

[Defense Counsel]: Simply that Officer Fox, who testified that statements were made; and given that other officers would have prepared police reports and were listening over a wire, if their reports do not report those statements, then the lack of

a report would be exculpatory; and, therefore, those reports should be provided to the [D]efendant.

. . . .

[The State]: None of the takedown officers who are the officers that she's referring to would have been listening over the wire, attempted to detail any conversation with the [D]efendant and Officer Fox. Their reports are just of the summary nature of the deal was concluded and we went in. They don't attempt to give any description of what was said. So the absence of any particular phrase or part of what they said, there's nothing that contradicts Officer Fox. There's nothing there where those officers attempt to recreate the conversation, whatsoever.

The trial court concluded that the disputed reports were not rendered exculpatory merely "because an officer didn't write something down." In response, the Defendant cites Kyles v. Whitley, 514 U.S. 419, 450-51 (1995). In Kyles, a murder case, police believed that the killer had left his car in a particular parking lot. The United States Supreme Court deemed exculpatory a list of cars present in that parking lot, because the list did not contain the defendant's car. Id.

We agree that in Kyles the fact that "an officer didn't write something down" was exculpatory; that was the case, however, because the police created a list purporting to record every car in the parking lot. The State's response in the conversation above, however, indicates that the supplemental reports at issue in this case did not purport to record any conversations between the Defendant and police. Corroboration of Officer Fox's phone number request therefore appears to have been absent as a matter of standard policy; Officer Fox testified that such a request was a routine stalling tactic.

We need not consider each Brady factor, because we conclude that the information was not material. If impeached regarding their lack of corroboration, Officer Fox likely would have explained that the supplemental reports did not attempt to detail conversation between police and a target, and that the absence of his phone number request was to be expected. As the Defendant has not demonstrated a reasonable probability that the result of his trial would have been different had the supplemental reports been produced, this issue is without merit.

## II. Admission of Defense Photograph

At the Defendant's previous trial, Officer Black had marked a photograph of the crime scene to indicate the location at which he and Officer Fox purchased drugs from the Defendant. At this trial, he also marked a similar photograph to indicate where he had first seen the Defendant. Noticing that the two photographs had been marked in different locations, defense counsel asked Officer Black to explain the inconsistency. After reviewing his former testimony, Officer Black responded that, at the first trial, he had understood defense counsel to be asking where the purchase had taken place; at this trial, he understood defense counsel to be asking where he and Officer Fox

first saw the Defendant. The inconsistency explained, the trial court denied the Defendant's motion to introduce into evidence the picture from his previous trial.

It appears that the photograph from the previous trial was offered to prove a prior inconsistent statement for the purpose of impeaching the officer's credibility. Officer Black acknowledged and explained the inconsistency in his prior testimony. Under these circumstances, extrinsic evidence of a prior inconsistent statement is not admissible. State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998) (interpreting Tennessee Rule of Evidence 613). The trial court therefore did not abuse its discretion in excluding it.

### III. Prosecutorial Misconduct

The Defendant next contends that the trial court erred in denying his motion for a mistrial after certain remarks were made by the State during its rebuttal in closing argument:

> [The State]: Look, a conviction for casual exchange is a not guilty in this case. You might as well vote not guilty. We're trying this case because this man sold cocaine about nine hundred feet from this school. Not some casual exchange in a dingy room where people are smoking crack cocaine between each other. Out there on a street, a place that kids pass by to go to school. You know, I was wrong. I was wrong when I said that there was no victim in these kinds of cases. They're all over the place. In fact, I read it to you in the indictment as to who the victim is. You may not have paid any attention to it. It's some archaic language that is at the end of the indictment. Remember what I said? [The Defendant] did sell within a thousand feet of a school . . . against the peace and dignity of the State of Tennessee. There's your victim, society, the State of Tennessee. You want a more specific victim? There they are. You can't see them. There's a brick house around them, but they're in the house. They're in that house. They're in that house. They're in all these houses. Here they are, right here. Can you see them? They're there and there and there and there and there. They're over here. There's your victims. They're in that building.

> And [the Defendant] is trying to avoid responsibility for the crimes against the people in this circle, in this City, in this State, by making up something to you and hoping you can squeeze it in to some lesser offense that belongs to a people that have room in a party. I'll loan you a little bit. If this ain't a sale, there ain't never been one. And I don't care if it's one week or one month or one year or four years after the date that he did it, we're here this week in this [c]ourt in this City, to hold him accountable and responsible. That's your duty.

The Defendant did not object or move for a mistrial during the State's rebuttal. Immediately after closing arguments, the jury was excused for a short break. At this time, the Defendant moved for a mistrial. The State contends that the issue is waived. See Tenn. R. App. P. 36(a). In response, the Defendant cites State v. Robinson, 971 S.W.2d 30, 42-43 (Tenn. Crim App. 1997), for the

proposition that "either a contemporaneous objection or a motion for mistrial prevents a waiver of the issue." In Robinson, however, this Court simply stated that "[t]he defendant's failure to make a contemporaneous objection or motion for mistrial constitutes a waiver of the issue absent the existence of plain error." Id. We read the word "contemporaneous" as modifying both "objection" and "motion for mistrial" in this quote; it therefore does not, as the Defendant urges, require either a contemporaneous objection or a non-contemporaneous motion for mistrial.

The record reflects that the trial court denied the motion for a mistrial not based upon waiver, but because the trial court determined that the comments were not improper. We therefore review the issue on the merits.

In successful claims of prosecutorial misconduct, a defendant must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to his detriment. Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). Tennessee courts "have traditionally provided counsel with a wide latitude of discretion in the content of their final argument" and trial judges with "wide discretion in control of the argument." State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). A party's closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999).

For a defendant to be entitled to a new trial on the basis of allegedly improper remarks during closing arguments, the remarks must be shown to have prejudiced the case by affecting the jury's verdict. Middlebrooks, 995 S.W.2d at 559. In determining whether this occurred, we consider the following factors: (1) the conduct viewed in light of the circumstances and facts in the case; (2) any curative measures taken by the trial court and the prosecution; (3) the prosecutor's intent in making the improper statements; (4) the cumulative effect of the prosecutor's statements and other errors in the record; and (5) the relative strength and weakness of the case. Id. at 560.

The Defendant relies upon this Court's comment in State v. Dedonnas R. Thomas, No. W2000-01465-CCA-R3-CD, 2002 WL 1558687 at *4 (Tenn. Crim. App., Jackson, Jan. 30, 2002), that "[a]rguments that invoke the 'War on Drugs' as a rallying point to return a guilty verdict can be particularly pernicious." In our view, the State did not invoke the "War on Drugs" in its rebuttal; rather, it addressed the issue of whether drug sales are victimless crimes and argued that such sales harm society generally and create a negative environment for nearby residents. The State presented a strong case which included the Defendant's own testimony that he sold crack cocaine in exchange for thirty dollars. We conclude that the comments objected to were not so inflammatory or improper that the verdict was affected to the Defendant's prejudice. This issue is without merit.

## IV. Jury Instruction on Attempted Sale

The Defendant next contends that the trial court erred by denying his request for a jury instruction on attempted sale of less than .5 grams of cocaine because the post-arrest discovery of Officer Fox's thirty dollars on the ground supports an inference that the Defendant never received that thirty dollars.

Attempted sale of less than .5 grams of cocaine is a lesser-included offense of sale of less than .5 grams of cocaine.  See State v. Burns, 6 S.W.3d 453, 466-67 (noting that "an attempt to commit the offense charged" is a lesser included offense).  Tennessee Code Annotated section 40-18-110(a) states that a trial judge

> shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense.  In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence.  The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

The Defendant apparently argues that the presence of Officer Fox's thirty dollars on the ground after his arrest is legally sufficient to support the proposition that he was unsuccessful in receiving that money from Officer Fox at the time of the alleged exchange, instead letting it fall to the ground without ever taking possession.  We disagree.  Although the money's presence on the ground is not inconsistent with the attempt theory, it is not evidence of that theory's validity.  In the absence of any testimony or evidence to the effect that the money fell to the ground before being received by the Defendant, we are left with testimony by Officer Fox, Officer Black and the Defendant himself that the Defendant took the thirty dollars in exchange for a small amount of white rock substance.  The trial court did not violate Tennessee Code Annotated section 40-18-110(a) in denying the Defendant's request for an attempt instruction.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the Defendant's conviction.

_____
DAVID H. WELLES, JUDGE