IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 26, 2010 Session

## STATE OF TENNESSEE v. DANIEL H. JONES

**Appeal from the Criminal Court for Sullivan County**
**No. S53,124    Robert H. Montgomery, Jr., Judge**

_____

**No.  E2010-00016-CCA-R3-CD - Filed June 6, 2011**

_____

The Sullivan County Grand Jury charged by presentment Appellant, Daniel H. Jones, with possession of .5 gram of cocaine with intent to sell.  This charge was the result of the execution of a search warrant during which officers arrested five individuals and found containers holding rocks of crack cocaine and other drug paraphernalia.  After a jury trial held on August 26, 28, and 29, 2008, Appellant was convicted as charged.  The trial court sentenced Appellant to eleven years as a Range I, standard offender.  On appeal, Appellant argues that the trial court erred in allowing testimony of a prior bad act of Appellant in contravention of Rule 404(b) of the Tennessee Rules of Evidence and that the evidence was insufficient to support his conviction.  After a thorough review of the record, we conclude that the trial court did not abuse its discretion in admitting the evidence in question and that the evidence was sufficient to support Appellant's conviction.  Therefore, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Gregory W. Francisco, Kingsport, Tennessee, for the appellant, Daniel H. Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Greeley Wells, District Attorney General; and Kent Chitwood, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On October 19, 2005, Officer Sean Chambers observed a residence at 805 East Sullivan Street in Kingsport, Tennessee. From this observation, Chambers believed he had sufficient probable cause to obtain a search warrant. He successfully obtained a search warrant for the residence in question.

On October 20, 2005, Ms. Lillian Horton saw Appellant on the porch of 805 East Sullivan Street. She approached Appellant, who told her he was waiting on Robert Hale to arrive. Ms. Horton saw people coming and going from the residence during the time she was there. She also saw people sit down and smoke crack while they were there. Ms. Horton saw Appellant and three or four individuals go to the kitchen in the rear of the residence. When they returned, some of them stayed and smoked crack and the others left the residence. Ms. Horton only saw Appellant go to another room with other people. She never saw Mr. Harris or Ms. Aikens do that.

On the date in question, Ms. Aikens was living at 805 East Sullivan Street with Mr. Harris. She had been living with Mr. Harris for a couple of months in October 2005. During the months she was living there, she saw Appellant a few times a week. Mr. Harris stated that at that time, Appellant would come to his residence on a daily basis.

On October 20, 2005, Officers Steve Hammonds and Kevin Hite, with the Kingsport Police Department SWAT team, assisted with the execution of the search warrant obtained by Officer Chambers for the residence at 805 East Sullivan Street. Upon their initial approach, Officer Hammonds encountered Jon Harris, the resident, on the front porch. Officer Hammonds saw Lillian Horton seated on a couch just inside the front door. When Officer Hammonds entered the residence, he found Appellant standing in the doorway of a bedroom located immediately to the right of the front door.

Officer Hammonds ordered Appellant to get onto the ground. Appellant refused, and Officer Hammonds pulled Appellant onto the ground. Officer Hammonds saw Amanda Aiken in the bedroom. Officer Hammonds remained in the living room watching Appellant and the two females. The rest of the SWAT team was searching the residence. Officer Hite proceeded to the bathroom. He found Robert Hale standing over the toilet. Officer Hite immediately placed Mr. Hite on the ground and looked into the toilet. In the toilet, he found a plastic baggie containing several "off-colored, off-white colored rocks" that appeared to be crack cocaine. Officer Hammonds heard Officer Hite yell that he had found narcotics in the toilet bowl.

The officers eventually handcuffed everyone in the house and brought them all into the living room. Once the occupants of the residence had been secured, Officer Chambers entered the house. He first Mirandized the individuals in the living room. He attempted to discover who owned the crack that had been found in the toilet. Afterwards, the officers began to search the residence, as well as each individual. When the officers searched Mr. Harris, they found crack cocaine and $46 in cash. When they searched Ms. Aiken, they found a crack pipe.

The officers began with a search of the living room. In the living room, the officers found a razor blade on top of a CD case. Razor blades are often used to cut or chop cocaine. In addition to the razor blade, the officers found a rolled cigarette, a pair of hemostats and rolling papers, a peach-colored pill, and several handwritten notes. The notes were messages stating that someone had gone out to run an errand and would return shortly or the person could be found at a certain location. In the bathroom, Officer Chambers obtained the plastic baggie that contained crack cocaine. Officers also found a black plastic key case containing crack cocaine, $309 in cash, two cell phones, and two sets of keys behind a laundry basket in the bathroom. The keys did not belong to Appellant's vehicle.

The officers also searched the bedroom. The officers found a piece of crack cocaine on top of a Tennessee driver's handbook, a bag of drug paraphernalia, two bags of hypodermic needles, a lighter, crack pipe filters, another razor blade, and a pushrod, which is used to push the filters into and out of crack pipes. Officer Chambers also found a Tic Tac box containing over twenty-five rocks of crack cocaine under the mattress of the bed. Officer Chambers also found a small bottle containing one rock of crack cocaine under the mattress and a tin in the pocket of a shirt in a closet containing three or four rocks of crack cocaine.

Officer Chambers testified at trial that the residence in question did not have electricity. The only light was in the living room from a single lamp which was connected to an extension cord that had been run from another building. In addition, the officers did not locate any food in the residence.

After completing the search of the residence, the individuals found in the house were transported to the police station. Officer Chambers interviewed Appellant. Appellant gave the following statement, "Jon Harris is my cousin. I visit him daily at his apartment on East Sullivan Street. I do not smoke crack cocaine nor do I sell crack cocaine. That is my statement."

At trial, Officer Chambers testified that the number of the rocks of crack cocaine contained in the Tic Tac box was more than a typical user would have in their possession.

Ms. Aikens testified at trial about the day in question. She stated that she was on the bed smoking crack when the officers arrived. She had purchased the crack from Appellant who gave her the cocaine from a Tic Tac box he kept in his pants pocket. When the officers arrived, Appellant placed the Tic Tac box under the mattress, and Ms. Aikens threw her cocaine across the room. Ms. Aikens stated that the cocaine found in the baggie in the bathroom belonged to Mr. Hale. The cocaine, driver's handbook, razor blade in the bedroom, the bag with drug paraphernalia, and the bottle containing crack cocaine belonged to her. The Tic Tac box containing a large amount of cocaine belonged to Appellant. Ms. Aikens also stated that about two weeks before October 20, 2005, she saw Appellant with a Tic Tac box with cocaine in it. She saw him sell the cocaine in the Tic Tac box in exchange for money.

Mr. Harris stated that he had bought the rock of crack cocaine from Appellant. He said that Appellant kept his crack cocaine in a Tic Tac box and that Appellant did this frequently. Mr. Harris also testified that he had never seen Appellant actually use crack cocaine.

## ANALYSIS

On appeal, Appellant argues that "the Trial Court erred in allowing testimony of the prior bad act of the Defendant having previously possessed cocaine in a Tic Tac box into evidence in this Trial for the purpose of corroborating otherwise uncorroborated co-defendant/accomplice testimony." Furthermore, Appellant argues that there was insufficient evidence to support his conviction without the wrongfully admitted evidence.

## Prior Bad Acts

As we begin our analysis, we note well-established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). The general rule is that evidence of a defendant's prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Tennessee Rule of Evidence 404(b) permits the admission of evidence of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of

accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmts.; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crime, wrong, or act to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

The rationale underlying Rule 404(b)'s exclusion of evidence of a defendant's prior bad acts is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996).

At a hearing held prior to trial, Appellant made an oral motion in limine to have a portion of the testimony of Officer Sean Chambers excluded from trial. The testimony in question concerned Appellant's arrest two months before the date in question. During that arrest, Officer Chambers found Appellant in possession of a Tic Tac box containing several rocks of crack cocaine. After hearing argument from both sides, the trial court ruled that Officer Chambers's testimony regarding Appellant's prior possession of a Tic Tac box containing cocaine was not admissible because the probative value was outweighed by the danger of unfair prejudice.

During the trial, the trial court discussed the inclusion of the names of the co-defendants, Mr. Harris, Ms. Horton, Ms. Aiken, and Mr. Hale, in the jury instruction in connection with the definition of accomplice. The trial court stated that the determination as to who would be considered an accomplice would be up to the jury. The State brought up that Ms. Horton, Ms. Aikens, and Mr. Harris were witnesses at trial for the State, and if they were determined to be accomplices additional corroborating evidence would be necessary to corroborate their testimony. The State argued that Officer Chambers's testimony regarding Appellant's prior possession of the Tic Tac box should be admitted to corroborate the testimony of the potential accomplices. The trial court held a jury-out hearing on the

issue. At the conclusion of the hearing, the trial court determined that the probative value outweighed the danger of unfair prejudice. The trial court's findings are as follows:

> [B]oth Mr. Harris, Ms. Aikens as well as Ms. Horton, because they were all three — they testified they were all in the house when this occurred; because the drugs were not found on anybody who they belong to is [obviously] a relevant issue in this case. We also, though, have a situation, too, where we have, and under the accomplice theory then accomplice testimony cannot be corroborated by another accomplice. And assuming the jury found all three of those people to be accomplices, then there would be — because that's the only people — only individuals' testimony that it belongs to the defendant. That would be essentially the end of the State's case. Now, I previously ruled with regard to the issue of their seeing him with a Tic-Tac box in the period of time two weeks before this occurred because I found that the relevance of that and the probative value outweighed the danger of unfair prejudice and what we also have, based upon the testimony that I previously heard in the suppression hearing was, is that two weeks — within two months prior to this event the defendant was found [with a Tic Tac box containing rocks of crack cocaine.]
>
> . . . .
>
> And because of the Tic-Tac box I find that that is relevant corroborative evidence and so the issue that I have to decide is whether the probative value is outweighed by the danger of unfair prejudice. And of course I've already let in the information with regard to the Tic-Tac box was within two weeks and give a cautionary instruction to the jury about that and because of the fact that we're dealing with an issue of accomplices and accomplice's [sic] testimony in this — the Tic-Tac box on the defendant. Now what was the weight on that one? Do you recall, General?
>
> [Appellant's counsel]: The weight of the — exactly, .5 grams according to the lab result.
>
> The Court: Does it say the number of rocks, do you recall?
>
> [Assistant District Attorney General]: Judge, it doesn't, it just says .5 gram.
>
> . . . .

-6-

[Assistant District Attorney]: . . . Judge, the officer's note says several rocks. He did not count them out.

The Court: Well, I find that that amount and the fact that it was several, I find that the probative value is not outweighed by the danger of unfair prejudice for the purpose of the use — solely for the corroboration of the testimony of people that may end up determined to be accomplices.

Officer Chambers was recalled to the witness stand. He testified that he saw Appellant on August 29, 2005. On that date, Officer Chambers searched Appellant and found a Tic Tac box containing what appeared to be crack cocaine. Officer Chambers said that the Tic Tac boxes he found on August 29th and during the search in question "both had a bottom layer of Kleenex that was packed inside the box with tan colored rocks laying on top of that." Officer Chambers stated that the Tic Tac box found on August 29th contained more than one rock of crack cocaine.

The record demonstrates that the trial court met the requirements under Rule 404(b) before determining that Officer Chambers's testimony was admissible. Our determination on appeal is whether the trial court abused its discretion in admitting the testimony. As stated above, in the jury-out hearing, the trial court determined that Officer Chambers's testimony regarding Appellant's prior possession of a Tic Tac box containing rocks of crack cocaine was admissible in part because it corroborated the testimony of the other witnesses at trial.

In *State v. Caughron*, 855 S.W.2d 526 (Tenn. 1993), our supreme court addressed a similar situation. In *Caughron*, the defendant was convicted of first degree premeditated murder. *Caughron*, 855 S.W.2d at 530. The accomplice testified that the defendant beat the victim with a pool stick, tied up the victim with sheer material the defendant kept in his car, and after attempting to have intercourse with the victim, slapped the victim on her buttocks. *Id.* at 531. Another witness, Jimmy Huskey, testified that the defendant owned a pool stick similar to the one described by the accomplice, that the defendant kept a light-colored, sheer table cloth in his car, and that the defendant had told him that slapping women on the buttocks "really turned him on." *Id.* at 532. On appeal, the defendant argued that the evidence about the pool stick, the sheer material, and his propensity to slap women on the buttocks should not have been allowed into evidence based upon Rule 404(b) of the Tennessee Rules of Evidence. Our supreme court held that the evidence was admissible "to connect Defendant to this crime and corroborate the accomplice's testimony." *Id.* at 538.

-7-

The same can be said about Officer Chambers's testimony regarding the Tic Tac box. His testimony about Appellant's prior possession of the Tic Tac box is necessary to answer the question who owned the Tic Tac box found under the mattress, i.e. to connect Appellant to the crime, and to corroborate the testimony of the other witnesses who could be considered accomplices. We conclude that the evidence was admitted for purposes other than to prove character, which is prohibited by the rule in question. Therefore, the trial court did not abuse its discretion in allowing the testimony of Officer Chambers regarding Appellant's prior possession of a Tic Tac box configured in an identical manner to that found under the mattress on the date of the offense which is the subject of this appeal.

## Sufficiency of the Evidence

Appellant also argues that there was insufficient evidence to support his conviction because the evidence of his prior possession of the Tic Tac box should have been excluded. As stated above, we have determined that the trial court did not abuse its discretion in allowing the testimony in question. Appellant argues that the testimony in question did not sufficiently corroborate the testimony of the other three witnesses who could have been considered accomplices.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such

evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

It is true that convictions may not be based solely upon the uncorroborated testimony of accomplices. *See State v. Robinson*, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. *See State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). More specifically, precedent provides that:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must[,] of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

*State v. Griffis*, 964 S.W.2d 577, 588–89 (Tenn. Crim. App. 1997) (quoting *Sherrill v. State*, 321 S.W.2d 811, 815 (Tenn. 1959)). In addition, our courts have stated that:

> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*Id.* at 589 (footnotes omitted). Furthermore, we note that the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine. *See id.* at 588; *State v. Maddox*, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

Officer Chambers testified that he found a Tic Tac box with Kleenex layered in the bottom cushioning several rocks of crack cocaine. This occurred within two months of the search of the East Sullivan residence during which a Tic Tac box with Kleenex layered in the bottom and containing several rock of crack cocaine was found under a mattress. Ms. Aikens testified that she was in the bedroom smoking crack that had been given to her by Appellant from a Tic Tac box he kept in his pants pocket. She stated that she had seen Appellant with a Tic Tac box containing cocaine about two weeks before the search. On the earlier occasion, she saw Appellant sell crack cocaine he kept in the Tic Tac box for money. Mr. Harris also testified that Appellant kept his crack cocaine in a Tic Tac box.

We conclude that Officer Chambers's testimony is sufficient to corroborate this testimony. The earlier possession of the Tic Tac box connects Appellant with the Tic Tac box found in the residence during the search. *See Griffis*, 964 S.W.2d at 588–89. Clearly, the jury concluded that Officer Chambers's testimony was sufficient to corroborate the other testimony. Therefore, we find that the evidence is sufficient to support Appellant's conviction.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE