IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 17, 2019

FILED
06/25/2020
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. ANTYWAN EUGENE SAVELY

**Appeal from the Circuit Court for Bedford County**
**No. 2018-CR-18782      M. Wyatt Burk, Judge**

_____

### No. M2019-00249-CCA-R3-CD
_____

The Defendant, Antywan Eugene Savely, was convicted by a Bedford County Circuit Court jury of the sale of a Schedule II drug, a Class C felony; the delivery of a Schedule II drug, a Class C felony; and conspiracy to sell or deliver a Schedule II drug, a Class D felony. The court merged the delivery conviction into the sale conviction and imposed a twelve-year sentence as a Persistent Offender. The court imposed a consecutive twelve-year sentence as a Career Offender for the conspiracy conviction, for an effective term of twenty-four years in the Department of Correction. On appeal, the Defendant argues that: (1) the trial court abused its discretion in ruling that the State could cross-examine him on a twenty-two-year-old felony conviction; (2) the evidence is insufficient to sustain his convictions; and (3) the trial court erred in imposing consecutive sentencing. After review, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and Norma McGee OGLE, JJ., joined.

Garrett D. Haynes, Shelbyville, Tennessee, for the appellant, Antywan Eugene Savely.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTS

The Defendant was indicted for the sale of codeine, a Schedule II drug; the delivery of codeine; and conspiracy to sell or deliver codeine, as a result of a controlled drug buy overseen by the 17th Judicial District Drug Task Force.

Lieutenant Timothy Miller was the assistant director of the task force at the time of the incident in this case and, in that role, often worked with confidential informants. Brian Smith was one such informant, and Lieutenant Miller testified that Mr. Smith "did a really good job." Mr. Smith did not know the Defendant's name, only mentioning him by description, and he called the other man "Joe." Lieutenant Miller suspected that "Joe" was Joseph Perez, a known drug user. After the fact, Lieutenant Miller recalled having seen the Defendant many years earlier.

Lieutenant Miller stated that on June 9, 2016, Mr. Smith contacted him with information that two individuals were looking to sell a bottle of morphine. Lieutenant Miller asked Mr. Smith to arrange a meeting with the individuals in which Lieutenant Miller would go undercover and pose as a prospective buyer. Mr. Smith arranged for them to meet in the parking lot of a liquor store and informed Lieutenant Miller that the individuals would be in a late 1990s model red SUV. Agent Shane George, another member of the drug task force, was to conduct surveillance of the drug buy.

Lieutenant Miller parked his car at a nearby location and counted out $160 in buy money, the serial numbers and denominations of the bills which he recorded, as well as outfitted himself with an audio recorder. He then walked to the liquor store and approached a vehicle matching the description he was given. He went up to the passenger's side and saw the Defendant sitting there, but the Defendant motioned for him to go around to the driver's side where Joseph Perez was sitting. Lieutenant Miller said that it was obvious the two men were anticipating his arrival. Lieutenant Miller walked around to the driver's side, and Mr. Perez opened the door. He saw the Defendant pass Mr. Perez a small bottle. Mr. Perez passed the bottle to Lieutenant Miller and said the price was $150. Lieutenant Miller questioned the authenticity of the contents, and Mr. Perez said that Lieutenant Miller could sample the product. Lieutenant Miller declined to sample the product but agreed to the price. Lieutenant Miller handed Mr. Perez $160, and Mr. Perez went to a nearby convenience store to get change.

Lieutenant Miller testified that while he waited on Mr. Perez, he sat down in the driver's seat and tried to engage the Defendant in small talk. However, the Defendant did not want to converse other than to ask Lieutenant Miller to lift his shirt. Lieutenant Miller noted that criminals often did this to make sure they were not being recorded. Rather than lifting up his shirt, Lieutenant Miller asked the Defendant to lift up his shirt in an effort to deflect the question and bide time until Mr. Perez returned. Mr. Perez returned with Lieutenant Miller's change, and Lieutenant Miller walked away and the two men drove off. Lieutenant Miller said that other officers immediately conducted a traffic stop of the red SUV, but the men were not arrested because Lieutenant Miller wanted to protect his informant.

Brian Smith, the confidential informant, testified that he knew Mr. Perez because they lived in the same apartment complex, and he had previously met the Defendant through Mr. Perez. On June 9, 2016, Mr. Perez contacted him about finding a willing buyer for a bottle of liquid morphine. Mr. Smith acknowledged that the Defendant was not involved in this conversation. Mr. Smith contacted Lieutenant Miller to see if he was interested. Thereafter, Mr. Smith went to Mr. Perez's apartment to discuss the arrangements, and Mr. Perez's girlfriend and the Defendant were also present. Mr. Smith noted that the Defendant could hear the discussion and never reacted in a way that indicated he was not involved in the impending drug deal. Mr. Smith told the men that the potential buyer was his uncle, and he watched as the pair left to meet Lieutenant Miller in a red SUV. At some point after the men left the apartment, Mr. Perez called Mr. Smith and asked him what his uncle looked like because he was having trouble finding him.

On cross-examination, Mr. Smith acknowledged that the Defendant never said anything about selling morphine during the meeting at Mr. Perez's apartment and that he had no phone conversations or texts with the Defendant about the deal. Mr. Smith admitted to having been in some trouble with the drug task force, which was why he worked as a confidential informant.

Agent Shane George testified that he surveilled the transaction from across the street and then subsequently conducted a traffic stop of the Defendant and Mr. Perez. He saw Lieutenant Miller approach a red SUV and then saw Mr. Perez get out of the vehicle and go into the store, while Lieutenant Miller sat down in the driver's seat. Agent George did not observe any hand-to-hand exchange from his vantage point, but he listened to the conversation via Lieutenant Miller's wire transmitter.

Agent George testified that he had pre-arranged for a Shelbyville Police Department officer to conduct a traffic stop of Mr. Perez's vehicle after it exited the liquor store parking lot. Agent George then joined the Shelbyville officer and had both men exit the vehicle. Agent George searched Mr. Perez and found no money or drugs. He searched the Defendant and found $150 in one of his pants pockets. He believed that the cash was in all twenties and one ten-dollar bill. He acknowledged that he did not record the serial numbers on the bills. Agent George also searched the vehicle.

Joseph Perez testified that the Defendant called him on June 9, 2016, and said that he "had some liquid morphine . . . and needed help getting rid of it." Mr. Perez contacted Brian Smith to find a buyer and then drove to Murfreesboro to pick up the Defendant. The Defendant showed him a bottle, but Mr. Perez never saw its contents. The men

returned to Shelbyville, and Mr. Smith came to Mr. Perez's apartment and told them that his brother-in-law would meet them at the liquor store.

Mr. Perez testified that he drove himself and the Defendant to the liquor store in a red SUV. An older white male approached the vehicle, and, after some discussion, Mr. Perez told him the price of $150. Mr. Perez had originally quoted a price of $140 but added another $10 for gas. This confused the buyer because he thought the price was $140, but he agreed, and Mr. Perez went into the store to get change. Mr. Perez returned with the change, gave the money from the sale to the Defendant, and drove away. Mr. Perez initially attempted to follow the buyer to make sure he "[w]asn't the police" but lost sight of him. Shortly thereafter, he and the Defendant were pulled over by a black unmarked police vehicle. Mr. Perez said that the Defendant had the bottle of morphine in his possession during the drive from Murfreesboro but that Mr. Perez had possession of the bottle from the time they left his apartment until he handed it over to the buyer. Mr. Perez reiterated that the Defendant was the one who had the morphine and wanted to sell it but that he was a willing participant in the endeavor.

Agent Laura Cole, an analysist with the Tennessee Bureau of Investigation crime laboratory, testified that the substance that was purported to be liquid morphine was instead liquid codeine, a Schedule II controlled substance. The weight of the liquid was 16.94 grams.

Upon this proof, the jury convicted the Defendant as charged of sale of a Schedule II drug, delivery of a Schedule II drug, and conspiracy to sell or deliver a Schedule II drug.

## ANALYSIS

### I. Prior Conviction

The Defendant argues that the trial court abused its discretion in ruling that the State could cross-examine him on a twenty-two-year-old felony conviction for escape if he chose to testify.

A conviction may be used to impeach the testimony of an accused in a criminal prosecution if the following conditions are satisfied: (1) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (3) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and

(4) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). However, even if a prior conviction is remote, i.e., more than ten years have elapsed from the date of release from confinement or from the date of conviction if the witness was not in confinement, it may still be admissible if the proponent gives the adverse party sufficient advance notice of its intent to use such evidence and the court "determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tenn. R. Evid. 609(b). Thus, "[u]nder the evidentiary rules, the [S]tate bears a higher burden of establishing the admissibility of convictions over ten years old." State v. Thompson, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000).

Two factors should be considered when deciding whether the probative value of a prior conviction outweighs its unfair prejudicial effect. Mixon, 983 S.W.2d at 674. First, "[a] trial court should . . . analyze the relevance the impeaching conviction has to the issue of credibility." Id. (citation omitted). Second, if the trial court finds that the prior conviction is probative of the defendant's credibility, then the court should "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" Id. (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)). The more similar the impeaching conviction is to the offense for which the defendant is on trial, the greater the risk of a prejudicial effect to the defendant. Id.

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003).

At the conclusion of the State's proof and prior to the Defendant's deciding whether to testify, the trial court conducted a hearing on the State's notice of intent to cross-examine the Defendant on his prior convictions. The court ruled that the Defendant's prior drug convictions were too similar to the charged offenses and that the Defendant's prior aggravated robbery and theft convictions were beyond the ten-year rule and that the probative value did not substantially outweigh the risk of prejudice. However, with regard to the Defendant's twenty-two-year-old conviction for escape, the trial court found:

> In State versus Thompson[, 36 S.W.3d 102 (Tenn. Crim. App. 2000),] and State versus Ratliff, [673 S.W.2d 884, 885 (Tenn. Crim. App. 1984)], these are Tennessee cases, the court has held that the trial court did not abuse its discretion in allowing the State to impeach the defendant on his conviction

of escape. The crime of escape is probative of credibility, because it involves the intent to purposefully violate the law. Furthermore, the crime of escape bears no similarity to the crime of sale and delivery of codeine or conspiracy to sell or deliver codeine in this particular case.

So, I do find that the probative value substantially outweighs the prejudicial effect. And I think there is substantial case law that supports that proposition. And so, in this case, like I said, there is absolutely no similarity between escape and, and the crimes that have been accused of committing here on the sale and delivery of codeine and the conspiracy. And escape is highly probative of credibility, because it does involve the intent to purpose[ful]ly violate the law. And, again, State versus Thompson and State versus Ratliff had, have been affirmed in that regard, specifically on that issue and specifically those charges were well beyond the ten-year period on both of those cases. And so, I am going to allow the State to cross-examine or to use that conviction, if it so chooses.

The Defendant argues that the trial court abused its discretion in allowing cross-examination on a remote conviction for escape and in not conducting a fact-intensive inquiry to reach its decision. However, as detailed above, the court relied on rulings by this court in making its determination.

In Thompson, 36 S.W.3d 102, this court held:

With respect to the crime of escape, this court has upheld a trial court's determination that this crime is probative of credibility because it involves intent to purposefully violate the law. State v. Ratliff, 673 S.W.2d 884, 885 (Tenn. Crim. App. 1984). Furthermore, the crime of escape bears no similarity to the crime of aggravated rape. We hold that the trial court did not abuse its discretion in allowing for the impeachment use of the escape conviction, even though that conviction's sentence expired outside the ten-year period.

Id. at 111.

Here, although the trial court did not point to anything factually exceptional about the Defendant's prior escape conviction, in light of relevant precedent, the trial court determined that the probative value on credibility substantially outweighed the prejudicial effect and noted that escape bore no similarity to the drug offenses. We cannot conclude that the court abused its discretion. In any event, even if the court erred, the error did not affect the verdict.

- 6 -

In assessing the harmfulness of this error in a case in which the defendant did not testify, we are obliged to consider the "theory of the defense" in order to determine whether the erroneous impeachment would have had an impact on the result of the trial. See Galmore, 994 S.W.2d [120,] 125 [(Tenn. 1999)]. We glean the defense theory from the arguments of counsel, the presentation of evidence in the defendant's case-in-chief, and, when appropriate, from the tenor of cross-examination of state witnesses.

Thompson, 36 S.W.3d at 112.

It is easy to discern from the proof that the Defendant's theory was that he was merely in the vehicle with Mr. Perez and not part of the transaction. However, in addition to Mr. Perez's testimony that clearly inculpated the Defendant, Lieutenant Miller testified that he saw the Defendant pass the bottle to Mr. Perez, and Agent George testified that the Defendant had $150 on him when they were stopped immediately after the transaction. Notably, $150 was the exact amount of the drug transaction and no money was found on Mr. Perez. We are hard-pressed to see any possible credible testimony the Defendant could have given to counter this proof that would have led to a different verdict.

## II. Sufficiency

The Defendant argues that the evidence is insufficient to sustain his convictions, asserting that there was contradictory testimony at trial and that the proof showed that Mr. Perez was the guilty party. He also asserts that the only evidence of conspiracy came from Mr. Perez's testimony, which was not corroborated.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all

conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)).

Tennessee Code Annotated section 39-17-417(a)(4) provides, in pertinent part, that it is an offense for a defendant to knowingly possess a controlled substance with intent to sell or deliver it. "[A] sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." State v. Holston, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002).

The Defendant does not dispute that a Schedule II controlled substance changed hands; he essentially claims that he just happened to be in the vehicle and that Mr. Perez was the sole culprit. He also points to contradictory testimony at trial from Lieutenant

Miller and Mr. Perez as to who was in the possession of the drugs – Lieutenant Miller stating that the Defendant handed the bottle to Mr. Perez and Mr. Perez stating that he already had the drug in his possession. However, it is the province of the jury to assess the credibility of the witnesses and reconcile all conflicts in the evidence. In the light most favorable to the State, the evidence shows that the Defendant contacted Mr. Perez about selling a bottle of morphine, and Mr. Perez contacted Mr. Smith about finding a buyer. Mr. Smith contacted Lieutenant Miller, who set up a controlled buy. At the designated meeting, Lieutenant Miller saw the Defendant pass a bottle of purported morphine to Mr. Perez, and Mr. Perez passed it along to Lieutenant Miller. Lieutenant Miller gave Mr. Perez $160 and Mr. Perez gave him $10 in change. At the subsequent traffic stop, the Defendant was found with $150 in his possession, and Mr. Perez had no money in his possession. Given this proof, a rational trier of fact could find the Defendant guilty of the sale and delivery of a Schedule II drug.

With regard to the conspiracy conviction, the Defendant asserts that the only evidence of conspiracy was Mr. Perez's "testimony that the Defendant reached out to him about 'getting rid' of some morphine," and that this testimony was not corroborated. Conspiracy is committed if

> two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

Tenn. Code Ann. § 39-12-103(a). "No person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Id. § 39-12-103(d). "While the essence of the offense of conspiracy is an agreement to accomplish a criminal or unlawful act, . . . the agreement need not be formal or expressed, and it may be proven by circumstantial evidence." State v. Pike, 978 S.W.2d 904, 915 (Tenn. 1998) (internal citations omitted).

"An accomplice is defined as a person who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime." State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). A criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001) (citing State v. Stout, 46 S.W.3d 689, 696 (Tenn. 2001); State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Robinson, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997)). This principle has been described as follows:

"[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Whether sufficient corroboration exists is for the jury to determine. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). The jury determines "the degree of evidence necessary to corroborate the testimony of an accomplice, and it is sufficient 'if there is some other evidence fairly tending to connect the defendant with the commission of the crime.'" State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (quoting Clapp v. State, 30 S.W. 214, 217 (Tenn. 1895)).

As detailed above, Lieutenant Miller testified that he saw the Defendant pass the bottle of the purported drug to Mr. Perez, which Mr. Perez then gave to him. When the Defendant and Mr. Perez were subsequently pulled over following the transaction, the Defendant had $150 on him, the exact amount Lieutenant Miller paid for the drug, but Mr. Perez had no money on him. From this evidence, a rational trier of fact could find that Mr. Perez's testimony was sufficiently corroborated and that Mr. Perez and the Defendant had agreed to accomplish a criminal or unlawful act.

### III. Consecutive Sentencing

The Defendant lastly argues that the trial court erred in imposing consecutive sentencing. He asserts that the trial court failed to consider whether the aggregate length of the sentence was consistent with the purposes and principles of the sentencing act.

In imposing consecutive sentencing, the trial court found that the Defendant was "an offender whose criminal record is extensive," noting that he had seven prior felony and ten prior misdemeanor convictions. The court continued in its findings by

determining that "the presumption of concurrent sentencing is overcome" and that "this sentence is absolutely necessary to accomplish the ends of justice."

A trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies, including the one found by the trial court in this case – that the defendant is an offender whose record of criminal activity is extensive. Id. § 40-35-115(b)(2). We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013).

The Defendant has seven prior felony and ten prior misdemeanor convictions. In the pre-sentence report, he admitted to long-term use of crack cocaine and marijuana, which certainly constitutes criminal behavior. The trial court did not abuse its discretion in imposing consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE