IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2024

**STATE OF TENNESSEE v. JARVIS MILLER**

**Appeal from the Criminal Court for Shelby County**
No. 18-05294    Lee V. Coffee, Judge

_____

**No. W2023-01128-CCA-R3-CD**
_____

The Defendant, Jarvis Miller, appeals his twenty-five-year sentence at 100 percent in the Tennessee Department of Correction ("TDOC") for his second degree murder conviction. Specifically, he challenges the length and manner of his sentence as excessive because the trial court (1) failed to mitigate the Defendant's sentence based on "mistakenly recollected" facts from trial; (2) misapplied and gave improper weight to two enhancement factors; and (3) failed to give meaningful consideration to imposing an alternative sentence. After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TOM GREENHOLTZ, JJ., joined.

Charles E. Waldman (at trial), and Gerald S. Green (on appeal), Memphis, Tennessee, for the appellant, Jarvis Miller.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Kevin McAlpin and Jeff Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

This incident arises from the May 15, 2018 shooting of Joshua Threatt, the victim, at the Mill Creek apartments in Memphis, Tennessee. At the time, the Defendant was in a relationship with the victim's sister, Markea Threatt, with whom the Defendant had a child.

On May 15, 2018, the Defendant was at Ms. Threatt's apartment when she and the victim began arguing. When the Defendant asked what was wrong, Ms. Threatt replied, "[N]othing." The Defendant and Ms. Threatt drove to the Defendant's apartment. While driving, Ms. Threatt and the victim continued to argue over the phone, and the Defendant overheard the victim saying to Ms. Threatt that the Defendant was "laying around and doing what [he] want to do." Ms. Threatt hung up the phone, and the Defendant called the victim himself to find out what was said about him. The Defendant asked the victim what his "beef" was with the Defendant. The victim replied the Defendant needed to "come to [him] like a man" and then asked, "Where you at? . . . I'm about to pull up."

Shortly after the Defendant and Ms. Threatt arrived at the Defendant's apartment, the victim arrived and parked his car behind the Defendant's vehicle. The Defendant, who was in the parking lot and had his firearm in a locked holster on his person, "felt like it was going to turn bad." The victim exited his vehicle and asked, "[W]hat the problem [was,]" to which the Defendant replied, "You tell me[.]" The victim said the Defendant was a "b---- a-- n----" and was going to get his "a-- beat[.]" The Defendant told the victim to "go about his business" and turned away. When the Defendant heard the victim's car door open, he turned back around and saw the victim sitting in the driver's seat reaching toward the center console. The Defendant fired three shots. The victim was struck in the back of the head, and his car proceeded to roll forward over a curb, through a field, and into a fence.

While driving to the Defendant's apartment, the victim had called his girlfriend, Manesha Harmon. According to Ms. Harmon, the victim sounded normal during this phone call, and the two discussed their day, as customary. He told her to meet him at the Defendant's apartment. When Ms. Harmon attempted to call the victim back, he did not answer, so she called Ms. Threatt. While on the phone with Ms. Threatt, she heard gunshots. When Ms. Harmon arrived at the Defendant's apartment complex about ten minutes later, she asked where the victim was. The Defendant told her, "[H]e over there. He got popped."

The Defendant called 911, a recording of which was entered as an exhibit. The Defendant informed dispatch that he had shot someone and gave the location of the incident. When officers arrived, the Defendant flagged down law enforcement, identified himself, directed them to where the victim had crashed, and pointed toward where the gun he used was located. The Defendant was taken into custody, waived his *Miranda* rights, and gave a statement. In his statement, the Defendant detailed the events stated above and said he "wasn't 100 percent" certain he saw the victim with a gun but had "seen him reaching."

The autopsy showed the victim suffered one gunshot wound to the back of the head. One bullet defect was located toward the rear of the vehicle on the driver's side. Lieutenant John Stone of the Memphis Police Department used a trajectory rod on the victim's vehicle and the bullet defect. His opinion was that the bullet was "probably fired" from behind and that the victim "was sitting in the vehicle when he was shot." No weapon was located in the victim's vehicle.

At trial, the parties stipulated that the Defendant had a valid handgun carry permit on May 15, 2018, and that he had purchased the firearm used in this shooting on February 12, 2018. The Defendant testified that he had been a trained security guard for about two years prior to the shooting and was trained in de-escalation as well as assessing "lethal" and "less lethal" threats. He stated he had attempted to de-escalate the situation with the victim on the day of the shooting and that the victim had said he was going to kill the Defendant. He stated that when the victim had arrived at the Defendant's apartment complex, the victim was "very irate," yelling, and would not leave despite the Defendant's "plead[ing.]" The Defendant placed himself between the victim and Ms. Threatt and their daughter. The Defendant testified that the victim had said, "[Y]ou're about to let this b---- get you killed," and then, "[L]et me go grab this strap," before he walked back to his vehicle. The victim "[came] up with a black handgun[,]" and the Defendant proceeded to fire at the victim three times.

The Defendant maintained that he did not fire from behind the victim's vehicle and could not explain why a bullet defect was located toward the rear of the vehicle. He further asserted that the victim was not shot in the back of his head but instead in the "crown" of his head. When asked why the Defendant did not tell the police that the victim threatened to kill him or that he actually saw a gun, the Defendant said he told an officer about the gun and that he "figured" law enforcement would know that when he said the victim threatened him, it meant a threat to kill. He further attempted to clarify that though he told law enforcement that the victim was sitting in the driver's seat of his vehicle, he meant the victim had one foot in the vehicle and the other on the concrete.

The jury rejected the Defendant's self-defense claim and found him guilty of second degree murder. At the February 22, 2023 sentencing hearing, the trial court received victim impact statements from six of the victim's friends and family members, four of whom spoke at the sentencing hearing. The Defendant testified and offered the Threatt family his "deepest and sincerest apology" and expressed regret over the incident. He acknowledged that he had grown up with the victim, that the two knew each other's families, and that the victim had babysat the Defendant's daughter. He stated that, on the day of the shooting, he "saw something" in the victim he had not seen before. He explained, "I felt like I was

backed in a corner and I did have to, you know -- I did what felt I had to do at that moment, and I deeply regret that."

The State entered as an exhibit the Defendant's presentence report, and the trial court found the Defendant was a Range I offender. *See* Tenn. Code Ann. § 40-35-105. The trial court stated that in determining the appropriate sentence for this offense, it had considered all the factors pursuant to Tennessee Code Annotated section 40-35-210, including the evidence presented, the presentence report, enhancing and mitigating factors, the purposes and principles of sentencing pursuant to Code sections 40-35-102 and -103, the nature and characteristics of the criminal conduct, the statistical information provided by the Administrative Office of the Courts ("AOC") regarding similar offenses committed in Tennessee, the statement the Defendant made on his own behalf, the risk and needs assessment, and the Defendant's potential for rehabilitation.

Addressing the enhancement factors, the court found that the personal injuries inflicted upon, or the amount of damage to property sustained by or taken from the victim was particularly great, noting the monetary and psychological damages suffered by the victim's family. *See* Tenn. Code Ann. § 40-35-114(6). The trial court found that the Defendant possessed or employed a firearm during the commission of the offense, stating this was not an element of second degree murder. *See id.* § 40-35-114(9). The court noted the "outrageous" gun violence in Shelby County and stated many of these incidents involved stolen guns. The court clarified that the Defendant did not steal the firearm used in this offense and that he had bought it a few months prior to the killing. It further found that the Defendant had no hesitation in committing a crime in which risk to human life was high, finding that the shooting happened in an apartment complex, a public place, in broad daylight with others present, including the Defendant's daughter and girlfriend. *See id*. § 40-35-114(10). The trial court gave these enhancement factors "significant weight."

The trial court found only the catch-all mitigating factor applicable and noted that the Defendant had a minimal criminal history and that the Defendant had Still's disease, a medical illness which the Defendant had presented evidence on during the sentencing hearing. *See id.* § 40-35-113(13). In a separate written order, the trial court also noted that the Defendant had complied with the conditions of his bond as support for the application of this factor. The trial court gave this mitigation evidence "some" but "not much weight."

The trial court found that the Defendant did not assist authorities in locating or recovering persons or property involved in crime. *See* Tenn. Code Ann. § 40-35-113(10). It noted that although the Defendant directed law enforcement to the victim and firearm used, merely gesturing to police is "not really assisting and is not what mitigation is about."

- 4 -

The court further stated the Defendant had never taken responsibility for his actions, and his apology was "a sterile, non-apology[.]" It further commented that the Defendant expressed "absolutely no remorse" and offered "no genuine apology" to the victim's family.

The court acknowledged that Code section 40-35-102 mandated consideration of the limited prison space and state funds to build and maintain prisons and that confinement should be prioritized for convicted felons committing the most severe offenses, with criminal histories evincing a clear disregard for the laws. *See* Tenn. Code Ann. § 40-35-102(5). The trial court reviewed the confinement factors in Tennessee Code Annotated section 40-35-103(1) and found the Defendant did not have a long history of criminal conduct but that the offense was "especially violent[,]" "horrifying[,]" "shocking[,]" and "reprehensible." It stated the Defendant's actions took away three children's father, a son, a best friend, and a supporter. It stated there was "absolutely no excuse[]" for the Defendant's conduct and that the Defendant, in offering an "empty apology[,]" "continues to manipulate." It found the Defendant was "not truthful at trial[,]" "changed statements that didn't work[,]" and was "[j]ust saying words hoping they will be believed[.]" Based on the Defendant's Range I offender status and the Defendant's committing a Class A felony, the trial court sentenced the Defendant to twenty-five years in the TDOC, the maximum sentence within the range. *See* Tenn. Code Ann. §§ 39-13-210(c)(1), 40-35-112(a)(1). It further sentenced the Defendant pursuant to Tennessee Code Annotated section 40-35-501(i), explaining the Defendant would serve 100 percent of this sentence less fifteen percent of any earned sentence reduction credits.

The Defendant filed a motion for new trial on March 22, 2023, which was later amended twice. On July 31, 2023, the trial court denied the Defendant's motion for new trial. This timely appeal followed.

## II.    ANALYSIS

The Defendant argues the trial court abused its discretion in sentencing him to twenty-five years at 100 percent in TDOC. Specifically, he contends his sentence is excessive based on the trial court's (1) mistaken recollection of the facts used to deny mitigating factors, (2) misapplication and weighing of enhancement factors (6) and (9), and (3) failure to meaningfully consider an alternative sentence. We note that we have reordered and consolidated the Defendant's arguments for clarity.

The State responds the trial court acted within its direction where it imposed a within-range sentence and the record supports its sentencing decision. While the State

concedes the trial court misapplied enhancement factor (6), it argues this error neither invalidates the presumption of reasonableness given to the trial court's sentencing decision nor necessitates a reversal of the Defendant's sentence.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). *See Carter*, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the AOC as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own

behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43. Moreover, misapplication of an enhancement or mitigating factor no longer "invalidate[s] the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Accordingly, this court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Here, the Defendant was found guilty of second degree murder, a Class A felony. *See* Tenn. Code Ann. § 39-13-210(c)(1). As a Range I offender, the appropriate sentencing range was fifteen to twenty-five years. *See id.* § 40-35-112(a)(1). As such, a presumption of reasonableness must be given to the trial court's within-range sentence of twenty-five years if based upon a proper application of the purposes and principles of our Sentencing Act. *Bise*, 380 S.W.3d at 708. Accordingly, we will not disturb the trial court's sentencing decision absent an abuse of discretion in reaching its decision. *Id.*

We first turn to the Defendant's argument that the trial court "mistakenly recollected" facts in its sentencing decision when assessing certain mitigating circumstances. First, the Defendant argues the trial court improperly recounted that the Defendant failed to take responsibility for his actions. However, the trial court specifically considered the Defendant's apology "sterile" and not genuine. *See State v. Robinson*, 971 S.W.2d 30, 48 (Tenn. Crim. App. 1997) (affording deference to the trial court's refusal to mitigate the defendant's sentence upon finding he lacked remorse for his second degree murder offense); *State v. Heraud*, No. M1999-00279-CCA-R3-CD, 2000 WL 14698, at *5 (Tenn. Crim. App. Jan. 7, 2000) (refusing to mitigate a defendant's sentence based on finding his apology lacked remorse and sincerity). Generally, a trial court's findings of fact and credibility determinations at sentencing are binding on this court, *see State v. Raines*, 882 S.W.2d 376, 383 (Tenn. Crim. App. 1994), and the record here does not preponderate against the trial court's findings.

Similarly, the Defendant contends that the trial court erred by refusing to apply mitigating factor (10) because it mistakenly recollected that the Defendant failed to assist

authorities in locating property or persons involved in the crime. After the shooting, the Defendant called 911, reported the incident, identified himself as the shooter, and provided his and the victim's location. When law enforcement arrived at the scene, the Defendant flagged down officers, identified himself, and directed law enforcement to the victim and the firearm used. He then gave a detailed statement to law enforcement recounting the incident. We agree with the Defendant that the record supports the application of this mitigating factor. *See State v. Lord*, 894 S.W.2d 312, 318 (Tenn. Crim. App. 1994) (holding the assisting of authorities factor broad enough to extend to the recovery of victims and property associated with the criminal conduct and that such assistance should be considered in mitigation); *State v. Elrod*, No. E2021-00622-CCA-R3-CD, 2022 WL 894056, at *10 (Tenn. Crim. App. Mar. 28, 2022) (defendant remained at the crime scene and revealed the location of the murder weapon to responding officers); *State v. Logan*, No. 02C01-9609-CC-00297, 1997 WL 167231, at *4 (Tenn. Crim. App. Apr. 10, 1997) (defendant called 911 following the incident).

Next, the Defendant challenges the trial court's application of two enhancement factors. First, the Defendant challenges the trial court's application of enhancement factor (9)—that the Defendant used a firearm during the commission of the offense. While the Defendant contends the trial court implied in its findings he had purchased the firearm with an intent to kill rather than for his job as a security guard, the court's comments in this regard appear to be more of a clarification that the Defendant did not steal the firearm. Nevertheless, the record supports the application of this enhancement factor, as it only requires possession of a firearm, which, as the trial court noted, is not an element of second degree murder. *See* Tenn. Code Ann. §§ 39-13-210(a), 40-35-114(9); *State v. Mosby*, No. W2009-02575-CCA-R3-CD, 2011 WL 287345, at *4-5 (Tenn. Crim. App. Jan. 24, 2011) (finding enhancement factor (9) inapplicable where employing a firearm was an essential element of the offense).

The Defendant additionally challenges the application of enhancement factor (6)—that the personal injuries inflicted upon the victim were particularly great. The Defendant argues that murder necessarily involves great personal injury and, as such, the trial court "double-counted" this fact. *See* Tenn. Code Ann. § 40-35-114. The State concedes that the trial court misapplied this factor, and we agree. *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987) (concluding enhancement factor (6) should not be applied to a sentence when death is an element of the offense), *superseded on other grounds by State v. Wilkerson*, 905 S.W.2d 933 (Tenn.1995). Even so, the State proceeds to note that the trial court based its application of this factor on the victim's family's monetary loss and psychological suffering. We conclude this factor should be based on injury to the victim and not, by extension, to the victim's family. *See Raines*, 882 S.W.2d

at 384 (concluding the term "victim" as used in Tennessee Code Annotated section 40-35-114(3) was limited to the person killed and did not include those who lost a loved one); *State v. Denton*, No. 02C01-9409-CR-00186, 1996 WL 432338, at *12 (Tenn. Crim. App. Aug. 2, 1996) (applying *Raines*'s definition of "victim" to enhancement factor (6)).

In light of these circumstances, the Defendant argues his sentence was excessive. We first note that defendants are not entitled to the minimum sentence in a range, as trial courts have the discretion "to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Carter*, 254 S.W.3d at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). While the trial court misapplied enhancement factor (6), it found two applicable sentence enhancements—that the Defendant used a firearm during the commission of his offense and that he had no hesitation in committing a crime in which risk to human life was high—and gave these factors "significant weight." *See State v. Cross*, 362 S.W.3d 512, 528 (Tenn. 2012) (holding even one enhancement factor may justify imposing the maximum sentence). It also mitigated the Defendant's sentence due to his minimal criminal history, illness, and compliance with bond conditions, and it gave these circumstances "some" weight. Despite the trial court's failure to consider the Defendant's assistance to authorities, trial courts "are not locked into assigning any particular weight to this mitigating factor." *State v. Haire*, No. E2000-01636-CCA-R3-CD, 2002 WL 83604, at *21 (Tenn. Crim. App. Jan. 22, 2002). Furthermore, trial courts have the discretion to determine the weight given to each factor, and "mere disagreement" with its weighing of principles and factors is not a basis for an appeal. Tenn. Code Ann. § 40-35-210(d)-(f); *Bise*, 380 S.W.3d at 706, 709; *Carter*, 254 S.W.3d at 342-43. As such, we may not reverse a sentence based on the "trial court's failure to appropriately adjust a sentence in light of applicable, but merely advisory, mitigating or enhancement factors." *Carter*, 254 S.W.3d at 346 (internal quotation marks and alterations omitted).

Additionally, while the Defendant contends that the trial court gave no meaningful consideration to imposing an alternative sentence, he was convicted of second degree murder and, as such, was not eligible for probation. *See* Tenn. Code Ann. § 40-35-303(a). Moreover, the Defendant was required to serve 100 percent of his sentence. *See id.* § -501(i)(1), (2)(B). Accordingly, the trial court complied with the purposes and principles of the Sentencing Act and did not abuse its discretion in imposing this sentence. The Defendant is not entitled to relief.

## III.   CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
KYLE A. HIXSON, JUDGE